# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1586

_____

United States of America

*Plaintiff - Appellee*

v.

Phillip Vincent Ridings

*Defendant - Appellant*

_____

No. 22-1649

_____

United States of America

*Plaintiff - Appellee*

v.

Jody Douglas Davis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 12, 2023
Filed: July 28, 2023

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Jody Davis and Phillip Ridings appeal their convictions for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; money laundering, in violation of 18 U.S.C. § 1957; and money laundering and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 1957 and 2. On appeal, both Davis and Ridings claim the district court[1] erred when it admitted a redacted plea agreement that Ridings signed, but which did not ultimately result in a guilty plea. By the terms of the plea agreement, Ridings waived his rights under Rule 410 of the Federal Rules of Evidence. Davis also appeals his sentence, asserting that the district court imposed a sentence above the Sentencing Guidelines range based on his religious beliefs in violation of the First Amendment. We affirm.

## I.     BACKGROUND

Davis and Ridings convinced numerous people to invest in a wind generator concept invented by Ridings named "Dragonfly." Davis and Ridings represented that the Dragonfly was a revolutionary, jet engine-shaped wind turbine generator that could produce 60% more power than a traditional wind turbine generator. Ridings and Davis hired Belcan Engineering Group to make the Dragonfly design operational, agreeing to pay Belcan $574,000. Belcan required a downpayment of $58,000 before beginning any work. Belcan concluded that the design was not feasible and returned $15,766.50 of the original $58,000 payment.

Ridings also retained DAR Corporation to assist with prototyping the Dragonfly concept. DAR reported that Dragonfly was not commercially viable.

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

Notwithstanding this, Ridings and Davis utilized materials indicating that DAR had performed a computational fluid dynamics validation of the Dragonfly.

Ridings also discussed Dragonfly with Jeffrey Marchetta, a professor at the University of Memphis' Engineering Department. Marchetta's response was, at best, lukewarm, but Ridings altered a letter from Marchetta indicating Marchetta had "validated" Dragonfly. Ridings used letterhead containing the University of Memphis logo and did not include a faculty name or signature. Marchetta testified at trial that he considered the altered letter "a gross misrepresentation of [his] work." This altered letter was shown to numerous investors.

Davis met Uchenna Obi through a prayer line. Davis represented to Obi that Dragonfly was superior to current wind turbines, and that he would receive exclusive Dragonfly rights in Africa if he was willing to invest enough money in the project. Obi invested in Dragonfly and testified that he trusted Davis because he was "a Christian brother." Obi also recruited his business partners and brother-in-law into the scheme. Davis and Ridings showed the Obi investors the altered University of Memphis letter, stating they needed money to finish a working model. The Obi investors ultimately delivered $73,500 to Ridings.

Ridings and Davis made similar misrepresentations to a number of other investors, ultimately obtaining $1,138,845.28 from numerous victims. One investor reported that Davis frequently spoke of being a Godly and religious person and another stated that he felt a connection with Davis because of their shared Christian faith.

Ridings and Davis were indicted on charges of conspiracy to commit wire fraud, wire fraud and aiding and abetting wire fraud, money laundering, and engaging in monetary transactions in property derived from specified unlawful activity and aiding and abetting.

Ridings signed a plea agreement with the United States, but the plea agreement fell through at the change of plea hearing and Ridings declined to change his plea. The written plea agreement waived the protections of Federal Rule of Evidence 410 and expressly allowed the factual statements made by Ridings in the agreement to be used against him. The district court granted a motion by the government to admit at trial a redacted factual stipulation from Ridings' plea agreement with all references to Davis removed. Davis also unsuccessfully moved to exclude the redacted statement or to sever the trial. The court gave the following limiting instruction: "You may consider that statement of Mr. Ridings only in the case against him, but not in the case against Mr. Davis. You may not consider or even discuss Mr. Ridings' statement in any way when you are deciding if the government proved beyond a reasonable doubt its case against Mr. Davis."

Ridings and Davis were convicted on all counts. Ridings was sentenced to a 97-month term of imprisonment on each count to be served concurrently. The court upward varied and sentenced Davis to a 180-month term of imprisonment on five of the counts and a 120-month sentence on the remaining counts with all sentences to run concurrently. Ridings and Davis were both ordered to pay restitution jointly and severally in the amount of $1,138,845.28. Both defendants appeal.

## II.  DISCUSSION

### 1.  *Admission of the Plea Agreement*

We first address whether the district court erred in receiving Ridings' redacted plea agreement into evidence at the joint trial. Federal Rule of Evidence 410(a) provides that "a guilty plea that was later withdrawn . . . or . . . a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea" is not admissible. The protections offered by the rule are waivable. See United States v. Washburn, 728 F.3d 775, 779-80 (8th Cir. 2013) (quoting United States v. Young, 223 F.3d 905, 909 (8th Cir. 2000)). Ridings does not dispute the district

-4-

court's conclusion that his plea agreement waived the protections under Rule 410. Rather, he claims the statement should have been excluded under Rule 403 of the Federal Rules of Evidence.

A court may exclude relevant evidence under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice, risks confusing the issues or misleading the jury, causes undue delay, wastes time, or amounts to cumulative evidence. Rule 403 prejudice is something different than simply being evidence that is detrimental to a party's case; instead, the "rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." United States v. Myers, 503 F.3d 676, 682 (8th Cir. 2007). District courts have broad discretion under Rule 403, and we generally review for an abuse of discretion. Id. If the defendant fails to object, we review for plain error. See United States v. Jumping Eagle, 515 F.3d 794, 801 (8th Cir. 2008). To establish plain error, the party who failed to object must establish error that is both obvious and affected his substantial rights. United States v. Combs, 44 F.4th 815, 818 (8th Cir. 2022) (per curiam).

Even though Ridings objected to receipt of the factual statement, he did so on different grounds than he raises on appeal, thus we review for plain error. See Ludwig ex rel. McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1407 (8th Cir. 1994) ("An objection on one ground does not allow a party to argue on appeal that the evidence should have been excluded on different grounds."). Here, the admission of Ridings' statement was not unfairly prejudicial as against Ridings as it did not suggest decision on an improper basis. While Ridings argues that proposed plea agreements are not signed under oath and plea agreements are frequently accepted to minimize the consequences, he nonetheless admitted to the facts at issue, which, while unhelpful to his defense, were relevant and proper to consider in arriving at a verdict. They are in their nature no different than any number of statements or admissions that a defendant may make and are routinely received into evidence. The purpose of Rule 410 is to carve out an exception for statements made in plea negotiations, the knowing waiver of which leaves the statements exactly

where they would have been in the absence of the Rule.  There is no error here, plain or otherwise.

Davis contends that receipt of the statement against Ridings violated his rights under the Sixth Amendment, and that receipt of the statement was more prejudicial than probative towards Davis and the trial should have been severed.  In Bruton v. United States, the Supreme Court held that admitting a co-defendant's confession in a joint trial violates the Sixth Amendment's Confrontation Clause.  See 391 U.S. 123, 126 (1968).  That said, Bruton is not implicated when a non-testifying defendant's statement inculpates a co-defendant "inferentially-through linkage to other evidence."  United States v. Coleman, 349 F.3d 1077, 1085 (8th Cir. 2003); see Samia v. United States, 599 U.S. ___, 2023 WL 4139001, *11 (June 23, 2023) (determining that admission of a non-testifying co-defendant's confession that did not directly inculpate the defendant and the court offers a limiting instruction telling the jurors they may consider the confession only with respect to the confessing co-defendant does not violate the Confrontation Clause).  Thus, Bruton violations "may be avoided through redaction if a cautionary jury instruction is given, if the redactions are neutral, and if they do not obviously directly refer to the defendant."  Coleman, 349 F.3d at 1085.

Davis argues that the admission of the statement in his joint trial violated Rule 403, Bruton, and Crawford v. Washington, 541 U.S. 36 (2004).  The Crawford question is easily disposed of because Crawford is concerned with the inability to cross-examine a person who made a testimonial statement.  See Crawford, 541 U.S. at 38, 68.  In this case, Ridings testified, was subject to cross-examination, and no Crawford problem exists.  Consistent with Rule 403, the statement as received and presented to the jury was entirely silent about Davis or any conduct that could be attributed to Davis.  The district court fully instructed the jury regarding the limited use of the plea statement and the redactions to the document do not refer to Davis, nor were the redactions such that they drew an inference to Davis, as the entire document never mentioned Davis or any conduct attributable to him.  The district

court did not abuse its discretion in declining to sever the trial. See Samia, 2023 WL 4139001, at *10.

Finally, even if Bruton was implicated, there was an overwhelming quantum of evidence received at trial that was consistent with Ridings' statement, rendering admission of the factual statement, even if it was error, harmless beyond a reasonable doubt. See Coleman, 349 F.3d at 1086 (stating there is no Bruton problem if the evidence erroneously received is cumulative of overwhelming and largely uncontroverted evidence).

## 2. *Davis's Sentence*

We review the imposition of a sentence, including an upward variance and the substantive reasonableness of the particular sentence, applying a deferential abuse-of-discretion standard. See United States v. John, 27 F.4th 644, 651 (8th Cir. 2022) (citations omitted). Unobjected-to procedural sentencing errors are forfeited, and reviewed only for plain error. United States v. Burnette, 518 F.3d 942, 946 (8th Cir. 2008) (citation omitted). Since Davis did not object below to the sentence on First Amendment grounds, we review his procedural claims for plain error.

Here, the district court specifically stated that its sentence was not based on Davis's faith, but rather, the district court considered that Davis used faith to manipulate people who were susceptible to such manipulation and lull people into a false sense of security. This Court has upheld sentences where the district court took into account a defendant's abuse of a religious connection. See, e.g., United States v. Gunderson, 211 F.3d 1088, 1089 (8th Cir. 2000) (affirming sentence when the district court was concerned the defendant's crime reflected a moral failure and the court did not punish the defendant or hold him to a higher standard based on his professed faith); United States v. Hoffman, 626 F.3d 993, 998-99 (8th Cir. 2010) (determining the district court's statements that victims were frightened into believing they risked a loss of their salvation if they did not surrender and that

-7-

defendant abused his power as the girls' pastor were permissible sentencing considerations).

A "district court's rationale for granting [a] variance does not need to be extraordinary, only substantively reasonable." <u>United States v. Davis</u>, 20 F.4th 1217, 1221 (8th Cir. 2021). Here, the district court did not abuse its discretion by considering Davis's abuse of others' faith, nor is the sentence it imposed substantively unreasonable.

## III. CONCLUSION

We affirm the judgment of the district court.

_____