# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-1252

_____

United States of America

*Plaintiff - Appellee*

v.

James Garrett

*Defendant - Appellant*

_____

No. 23-1256

_____

United States of America

*Plaintiff - Appellee*

v.

Levi Garrett

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: October 19, 2023
Filed: May 29, 2024

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

A jury found James Garrett and Levi Garrett guilty of making false statements in connection with federal crop insurance, in violation of 18 U.S.C. § 1014. The Garretts appeal, challenging the district court's[1] evidentiary rulings and its denial of their post-trial motions. We affirm.

I.

James Garrett operated a farm in Sully County, South Dakota, with his son, Levi.[2] The Garretts participated in a federal crop insurance program, which was administered by Crop Risk Services (CRS) and backed by the Risk Management Agency of the United States Department of Agriculture (USDA). Through that program, they both obtained insurance for sunflower crops in 2018, and James obtained insurance for a corn crop in 2019.

In 2018, to receive full insurance coverage for a sunflower crop in Sully County, the USDA required that it be planted no later than June 20, 2018. James signed an acreage report certifying that he planted 1,115.22 acres of sunflowers between June 11 and June 16, 2018. And Levi signed an acreage report certifying that he planted 1,122.79 acres of sunflowers between June 10 and June 13, 2018. Both reports were signed on July 6, 2018. Above their signatures, the reports included the following statement:

---

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

[2]Because two members of the Garrett family are involved in this litigation, we use first names for clarity.

I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes.).

On June 27, 2018, a hailstorm hit Sully County, and the Garretts reported harvest losses to CRS. James reported a loss of $246,687, and Levi reported a loss of $248,361.

In 2019, to receive a discounted insurance premium for his corn crop, James agreed to plant at least twenty acres of corn on two or more fields within a square-mile section of land. On July 12, 2019, James signed an acreage report certifying that he planted 47.5 acres of corn on June 17, 2019, and that he was prevented from planting 2,171.28 acres of corn due to weather-related issues. That year, James reported a loss of $557,066.

Following an investigation, James and Levi were charged in a multi-count superseding indictment. As relevant to this appeal, both were charged with making a false statement in connection with the payment of federal crop insurance benefits, in violation of 18 U.S.C. § 1014. The indictment alleged that James falsely certified the number of acres of sunflowers he planted in 2018, as well as the number of acres of corn he planted in 2019. And it alleged that Levi falsely certified the number of sunflower acres he planted in 2018.

In October 2022, the case went to trial. The jury heard from several witnesses. Cody Hostler, part-owner of Sioux Nation, LLC, testified about supplying seed to the Garretts, including selling them sunflower seed in June 2018. Six neighbors testified about the Garretts' farming practices and their failure to timely plant or maintain their fields, and three of those same neighbors testified about Levi's character for truthfulness. Two CRS insurance adjusters, Barry Jennings and Mark Opp, testified about their inspections of fields where James certified having planted

-3-

corn in 2019. And Levi testified about the sunflower and corn crops that were ostensibly planted in 2018 and 2019, respectively.

The jury also examined dozens of exhibits, a few of which are relevant here. The government introduced Sioux Nation, LLC's handwritten log—a legal pad updated contemporaneously by its employees when seed purchases were delivered or picked up—that showed James received eight pallets of sunflower seed between June 20 and June 22, 2018. The government also introduced photographs and video from when Jennings and Opp inspected the Garretts' farm in 2019. The Garretts sought to introduce photographs of a neighboring field as a point of comparison, but the district court sustained the government's objection to their admission.

At the conclusion of the six-day trial, James was convicted on two counts of making a false statement in connection with insurance for sunflower and corn crops, and Levi was convicted on one count of making a false statement in connection with insurance for a sunflower crop. The Garretts timely moved for judgment of acquittal, and in the alternative, a new trial, under Federal Rules of Criminal Procedure 29 and 33, arguing there was insufficient evidence to support their convictions. The district court denied their motion. Then, after Hostler provided the Garretts with an affidavit "to clarify/detail" his trial testimony about Sioux Nation, LLC's handwritten log, they moved for reconsideration of their motion for a new trial pursuant to Rules 33 and 37. The district court denied that motion as well.

## II.

The Garretts appeal two of the district court's evidentiary rulings at trial—the admission of the Sioux Nation, LLC log and the exclusion of photographs of a neighboring field. They also appeal the denial of their motion for judgment of acquittal, or a new trial, and the denial of their motion for reconsideration. We consider each in turn.

-4-

## A.

First, with respect to their convictions for the 2018 false statements about sunflower crops, the Garretts argue that the district court erred in admitting the handwritten log maintained by Sioux Nation, LLC employees. When, as here, there is no timely objection to the admission of contested evidence at trial, we review for plain error. United States v. Kelley, 861 F.3d 790, 798 (8th Cir. 2017). "[U]nder plain error review, [a defendant] must show (1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected [their] substantial rights." United States v. White Bull, 646 F.3d 1082, 1091 (8th Cir. 2011) (citing Puckett v. United States, 556 U.S. 129 (2009)).

The government offered the handwritten log during Hostler's direct testimony. The Garretts now assert that the log was irrelevant because, during his cross-examination, Hostler acknowledged that he was not the sole author of the log. But the government had to prove beyond a reasonable doubt that James and Levi each made a false statement about the date they planted their crops. See 18 U.S.C. § 1014; United States v. Alexander, 679 F.3d 721, 726 (8th Cir. 2012). The log was offered to show when the Garretts purchased sunflower seed in 2018. As evidence of the date on which the seed was picked up or delivered—i.e., evidence of the earliest date the Garretts could have planted—the log was relevant. See Fed. R. Evid. 401 (stating that evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence"); see also Fed. R. Evid. 402 (stating that relevant evidence is generally admissible at trial).

The Garretts have also failed to explain why the log was not admissible pursuant to the hearsay rule exception for business records "kept in the course of a regularly conducted activity." See Fed. R. Evid. 803(6)(B). At trial, Hostler identified the log as comprising records of "seed deliveries or pickup." He testified that the records were kept in the ordinary course of Sioux Nation, LLC's business, and were updated at or near the time of each purchase. The Garretts assert that the log was unreliable and lacked proper foundation because, despite having contributed

to it, Hostler "did not personally create the [log] and could not verify its accuracy." But Hostler testified that some of the handwriting in the log was his own and the other writing was that of another Sioux Nation, LLC employee. Hostler explained that he recognized the other employee's handwriting because "there's only two or three [Sioux Nation, LLC employees who] are in charge of [that] stuff" and would fill out the log. We find no plain error in the admission of the log.

Second, with respect to James's conviction for the 2019 false statement about the corn crop, the Garretts argue that the district court erroneously excluded two photographs of a field adjacent to their farm. We review evidentiary rulings that have been preserved for appeal, as this one was, for an abuse of discretion. United States v. Guzman, 926 F.3d 991, 999 (8th Cir. 2019). "[A] district court's evidentiary rulings are subject to harmless error analysis under Federal Rule of Criminal Procedure 52(a)." United States v. Buffalo, 358 F.3d 519, 521–22 (8th Cir. 2004) (citation omitted). "An evidentiary error is harmless when, after reviewing the entire record, this court determines that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." United States v. Overton, 971 F.3d 756, 765 (8th Cir. 2020) (quoting United States v. DeMarce, 564 F.3d 989, 997 (8th Cir. 2009)).

The government's theory on this count was that although James certified that 47.5 acres of corn were planted, they were not—rather, corn stover was placed on the fields to make it look like corn had been planted.[3] To that end, the government offered photographs of the Garretts' fields, depicting what the insurance adjusters believed was stover that had been spread to give the appearance of a harvested crop. To rebut the government's theory, the Garretts offered two photographs that Levi took of a "disked corn field" that neighbored their land.[4] Although initially, Levi

---

[3]The jury heard testimony that "corn stover" meant parts of the corn plant, or "leftovers," that come out of the combine at harvest, including husks, stalks, and possibly kernels.

[4]The jury heard testimony that farmers may "disk" a field after harvest, which

-6-

testified that the photographs "were taken last spring," when asked if he remembered the month, he said "I think it was like in Novemberish." The government objected based on relevance and confusion of the issues. During a sidebar, the Garretts' counsel argued the photographs were relevant "for purposes of a comparison," because "the Government [wa]s trying to claim that the photos of the corn planted [on the Garretts' farm] were fake planted or stover was spread all over. And the [photos of the neighboring field] are nearly identical, if not even more bare than the photos [of the Garretts' farm] that [were] presented to the jury." Counsel for the Garretts represented that Levi had no relationship with the neighboring field. Levi nevertheless claimed to know "when the field was planted, when it was disked, [and] how many times over," but the only basis he proffered for that knowledge was the proximity of the field "to the highway where [they] drive back and forth to town." The district court sustained the government's objection, explaining that it was "disinclined to allow[] photographs of other fields prepared by other farmers using other machinery."

For our purposes, we assume that the photographs were relevant and admissible. But given the weight of the evidence to support James's conviction, any error had no more than a slight influence on the jury's verdict. See United States v. Love, 521 F.3d 1007, 1010 (8th Cir. 2008) (concluding any evidentiary error was harmless when the government presented "overwhelming evidence" of defendant's guilt). Insurance adjuster Jennings testified that in July 2019, when he first visited the two fields where corn had purportedly been planted the month before, the fields were "full of weeds" and did not appear "prepared for planting." On a second visit to the farm in September 2019, he was accompanied by insurance adjuster Opp. At that time, the fields were still "full of weeds," which had grown "waist high" and "in other places, probably chest high," and there was still "no growing crop." The Garretts were not given advance notice of the July and September visits, but in October, Opp alerted the Garretts that he and Jennings planned to inspect the fields

_____

can entail cutting through an area with a device to "churn it up" and "disturb everything" in preparation for the next year's crop.

where the corn had been planted. Eleven days after Opp's alert, Levi met Opp and Jennings and took them to two fields.[5] Jennings testified that it appeared that corn stover and weeds had been "plowed or mechanically engrained into the soil." Opp testified that he "knew it wasn't planted," and described how different the fields would have appeared had the corn in fact been planted and harvested. In addition to this testimony, the jury saw several photographs and a video of these fields taken during the inspections. Finally, although Levi testified that the 47.5 acres of corn were planted and harvested as certified by James, the jury also heard testimony from three of the Garretts' neighbors about his character for truthfulness. One described Levi as "very dishonest," another said he was "the least truthful person" he knew in the agriculture industry, and a third said Levi was someone whose word he "would not honor."

The Garretts had ample opportunity to challenge the government's theory with direct evidence and to cross-examine Jennings and Opp about their observations and assessment of the fields—opportunities they took advantage of. The jury heard Levi deny that corn stover had been spread on the fields. And it heard him testify about how he "handled the planting" in 2019, and describe the machinery used to harvest the corn, including a pre-owned combine he bought "specifically to combine the corn that year." Levi also testified about the inspection visit by Jennings and Opp, and the Garretts introduced photographs of the fields they inspected, as well as photographs of corn cob and husk—all of which Levi took during the inspection. The Garretts also introduced photographs of the machinery used to plant and harvest the corn, and the check Levi used to purchase the combine.

In sum, even assuming the photographs were relevant and admissible, their exclusion did not affect James's substantial rights. A review of the entire record convinces us that admission of the photographs into evidence would have had "little to no influence on the verdict." Love, 521 F.3d at 1010; see also United States v.

---

[5]Only one of the fields corresponded to the locations where James had certified planting and that Jennings and Opp had visited in September.

Picardi, 739 F.3d 1118, 1125 (8th Cir. 2014) (declining to reverse based on district court's evidentiary ruling when the limited probative value of the relevant evidence at issue was outweighed by the risk of confusing the issues, and even if the evidentiary exclusion had been improper, the defendant "was able to testify to the same information that he sought to convey through [the excluded evidence]").

B.

The Garretts argue the district court erred in denying their motion for judgment of acquittal, or in the alternative, a new trial, because the evidence was insufficient to support their convictions. We review a district court's ruling on a motion for judgment of acquittal de novo. United States v. Brown, 88 F.4th 750, 760 (8th Cir. 2023). In doing so, we "view[] the record in the light most favorable to the verdict and accept[] all reasonable inferences that support the verdict." United States v. Ali, 616 F.3d 745, 755 (8th Cir. 2010) (citation omitted). "We reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006) (citation omitted). Reliance on circumstantial evidence does not demand acquittal. See United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996) ("In determining the strength of the evidence in a circumstantial case, 'it is the totality of the circumstances that must be weighed in making a decision on a motion for acquittal.'" (quoting United States v. Kelton, 519 F.2d 366, 367 (8th Cir. 1975))).

We review a district court's ruling on a motion for a new trial for an abuse of discretion. United States v. Morris, 817 F.3d 1116, 1121 (8th Cir. 2016). "We will reverse the district court's Rule 33(a) ruling only if it is 'a clear and manifest abuse of discretion.'" United States v. Dowty, 964 F.3d 703, 708 (8th Cir. 2020) (quoting United States v. Amaya, 731 F.3d 761, 764 (8th Cir. 2013)). "A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." Id. (quoting United States v. Delacruz, 865 F.3d 1000, 1006 (8th Cir. 2017)).

To prove James and Levi guilty of making a false statement in connection with insurance for sunflower crops,[6] the government had to prove: (1) that each defendant knowingly made a false statement, (2) for the purpose of influencing the actions of (3) a federally insured financial institution. See 18 U.S.C. § 1014; Alexander, 679 F.3d at 726. The Garretts challenge the sufficiency of the evidence as to only the first element, arguing that a judgment of acquittal was warranted because the government failed to prove that either James or Levi knowingly made any false statement regarding whether or when sunflowers were planted.

The Garretts argue that their convictions were based solely on circumstantial evidence and supported by a "mere suspicion or possibility of guilt." See United States v. Robinson, 782 F.2d 128, 129 (8th Cir. 1986) ("All reasonable inferences in favor of the verdict must be drawn from the facts, but a conviction must be supported by substantial evidence and cannot be based on mere suspicion or possibility of guilt." (citations omitted)). They argue that the handwritten Sioux Nation, LLC log was insufficiently reliable for a reasonable jury to find beyond a reasonable doubt that they obtained the sunflower seed after their certified plant dates. Moreover, the Garretts assert that the government's theory was that they simply planted sunflowers too late, not that they failed to plant them at all. And furthermore, the government had no evidence of the date it believed they had, in fact, planted the sunflower seed they purchased.

After careful review, we conclude that the trial record supports the jury verdict, without resort to speculation. The jury heard testimony that the Garretts picked up or received a delivery of sunflower seed from Sioux Nation, LLC no earlier than June 20, 2018, which was after the date they certified having planted. The jury also heard six of the Garretts' neighbors testify about the Garretts' habitually late planting practices and chronic weed issues. For example, one

_____

[6]James offers no challenge to his conviction for making a false statement in connection with insurance for the corn crop apart from his assertion that the photographs of the neighboring field and related testimony were improperly excluded.

neighbor testified that she had "never seen [the Garretts] plant a crop before July," and another neighbor confirmed that in late June 2018, their fields looked "[l]ike they hadn't been planted into." And the jury heard testimony and saw records indicating that Levi sprayed herbicide on the same land where just weeks earlier he had allegedly planted sunflowers. The district court did not err in denying either the motion for judgment of acquittal or the motion for new trial.

C.

Finally, the Garretts appeal the denial of their motion for reconsideration based on newly discovered evidence. They contend that several statements in Hostler's post-trial affidavit refute his trial testimony and establish reasonable doubt as to when the sunflower seed was picked up or delivered from Sioux Nation, LLC for the 2018 planting season. We review a district court's ruling on a motion for reconsideration for an abuse of discretion. United States v. Luger, 837 F.3d 870, 875 (8th Cir. 2016).

"To warrant a new trial based on previously unavailable evidence, [a defendant] must demonstrate the following: '(1) the evidence is in fact newly discovered since trial; (2) diligence on [their] part [in identifying the evidence]; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial.'" United States v. Erickson, 999 F.3d 622, 631 (8th Cir. 2021) (quoting United States v. Shumaker, 866 F.3d 956, 961 (8th Cir. 2017)). The district court concluded that Hostler's affidavit did not meet this standard because it "present[ed] little new evidence," and "restate[d] facts that were drawn out from Hostler in his cross examination."

We agree. In his affidavit, Hostler expressly stated that his trial testimony "remains true and correct," and that the affidavit's purpose was solely to "clarify/detail" that testimony. The affidavit did not—as the Garretts argue—correct, refute, or recant any part of his testimony at trial. And as the district court found, the

-11-

"information [in Hostler's affidavit] not only was available to Defendants through due diligence, but also was brought out through cross examination of Hostler." To the extent the Garretts contend that Hostler's affidavit offered any clarifications, they have not explained why those could not have been elicited at trial. See United States v. Bell, 761 F.3d 900, 911 (8th Cir. 2014) (concluding that "[e]ven where an affidavit is not available until after trial, if the factual basis for the testimony in the affidavit existed before trial," it may not be the basis for a new trial (citation omitted)).

The district court did not abuse its discretion in denying the motion for reconsideration.

## III.

We affirm the judgment of the district court.

SHEPHERD, Circuit Judge, dissenting in part.

I join the majority's opinion in all respects except as to its conclusion in Part II.A. that the exclusion of the two photographs of adjacent fields was harmless error. In my view, the photos were relevant and should have been admitted, and the district court's failure to do so requires reversal of James's conviction on that count and remand for a new trial.

Relevant evidence is generally admissible, Fed. R. Evid. 402, and "[t]he standard for relevancy is low," United States v. Oldrock, 867 F.3d 934, 940 (8th Cir. 2017) (alteration in original) (citation omitted). So long as "there is 'any tendency' that evidence will make a consequential fact more or less probable, the '[e]vidence should be admitted.'" Id. (alteration in original) (citation omitted). And while district courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues," Fed. R. Evid. 403, that is not the case here. Moreover, the deference we give to a district court's evidentiary determinations is not absolute. See United States v. Condon, 720 F.3d 748, 754 (8th

Cir. 2013) (noting that a district court's exercise of discretion under Rule 403 is afforded deference only where it "[does] not unfairly prevent a party from proving [his] case" (first alteration in original)).

As the majority acknowledges, the Government's theory on the 2019 false-statement count against James was that, while James certified he had planted a specific acreage of corn, he instead spread corn stover on the fields "to make it look like corn had been planted," when no corn had actually been sowed. The photos were meant to directly rebut this theory, as they would serve as a comparator between the appearance of James's field and the "nearly identical" appearance of his neighbors' fields, in which corn had undisputedly been planted. Indeed, this was the exact argument that James's counsel made before the district court when the Government objected to the photos' admission based on relevance and confusion of the issues. In response to the district court's questioning of whether Levi knew the neighboring farmer, "when the field was planted, when it was disked, [and] how many times over[,]" Levi stated, "I do know that." Despite this, the district court denied admission of the photos because it was "disinclined to allow[] photographs of other fields prepared by other farmers using other machinery." But the district court's concern in this respect could have been fleshed out by the Government during a vigorous cross-examination of Levi, the photographer.

Evidentiary rulings are certainly subject to harmless-error analysis. United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017) ("We will reverse 'only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" (citation omitted)). But the exclusion of these photos was not harmless error. In United States v. Flenoid, 949 F.2d 970, 973 (8th Cir. 1991), we found the exclusion of witness testimony was not harmless where it "was not an insignificant piece of evidence," as "it was a crucial aspect of proving [the defendant's] theory of the case" because without it, the defendant "had no direct, independent support for his version of the events." In United States v. Lowery, 135 F.3d 957, 960 (5th Cir. 1998) (per curiam), the Fifth Circuit found an evidentiary exclusion was not harmless error where it left the defendant "little more

-13-

than the ability to make unsubstantiated . . . claims on the witness stand," and that the defendant "was made worse off by arguing his theory without being allowed to substantiate it, because without substantiation his theory of defense looked like a desperate conspiracy theory." Here, by excluding the photos, the district court left James with "no direct, independent support for his version of the events," Flenoid, 949 F.2d at 973, that is, that he never *made* a false statement in the first place, see United States v. Eason, 829 F.3d 633, 639 (8th Cir. 2016) (affirming exclusion of defendant's photographs of a crime scene where he provided no explanation of "how the photos would have significantly aided in [the jury's] assessment of the evidence or how seeing the scene would have influenced the verdict," and offered "no controverted issues at trial that the inclusion of the photographs would have helped resolve"). Here, unlike in Eason, the photographs James sought to introduce went to the most controverted issue on this count—whether James made a false statement. Accordingly, I am not convinced that the photos' exclusion "had little to no influence on the verdict." United States v. Love, 521 F.3d 1007, 1010 (8th Cir. 2008).

Because this error was not harmless, I would reverse James's conviction on this count and remand for a new trial. I therefore respectfully dissent from this part of the majority's opinion.

_____