# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2191

_____

United States of America

*Plaintiff - Appellee*

v.

Brandon Manning

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Central

_____

Submitted: February 13, 2024
Filed: July 5, 2024

_____

Before LOKEN, COLLOTON,[1] and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Brandon Manning was convicted of two counts of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). He appeals his conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. See 28 U.S.C. § 45(a)(1).

I.

In December 2019, the National Center for Missing and Exploited Children provided an Iowa task force with a "Cyber Tip" that a Google subscriber downloaded images of child pornography between June and December 2019. The subscriber's data was associated with Manning's primary and alternate email accounts, bank account, name, and contact information. Local law enforcement officers also found that Manning had a 2013 Iowa conviction for sexual exploitation of a minor, in violation of Iowa Code § 728.12(3) (2012). Based on this information, officers obtained a search warrant for Manning's apartment.

Officers executed the search warrant in March 2020. Before the search was underway, Manning walked to his car and started to back out of his driveway. Investigator Anderson, the officer in charge of the investigation and the first to arrive, blocked Manning from leaving and ordered him out of the car—for safety and to "make sure that no evidence [was] destroyed." Anderson gave Manning a copy of the search warrant, visually inspected the interior of the car, and searched Manning's person, seizing his cellphone in the process.

After backup officers arrived, Manning was told he was free to leave, but he stayed. At one point, when Investigator Anderson returned to his police vehicle, he saw Manning get back into his car and "heard him yell and move abruptly . . . like his shoulders heaving up and his head moving back." Anderson again ordered Manning out of the car, searched it, and found a second cellphone on the driver-side floorboard. The phone was broken and shards of broken glass from its screen were on the driver's seat. Anderson seized the broken phone. Inside Manning's apartment, officers also seized a portable Western Digital hard drive from his bedroom.

The electronic devices were sent to the Iowa Division of Criminal Investigation (DCI) lab for a forensic examination. In April 2021, Forensic Agent Kircher examined the contents of the hard drive and the broken phone's SD memory

card and found thousands of images and videos containing child pornography. The phone was so damaged that its files were only accessible by way of the SD card.

Agent Kircher used forensic software to extract metadata from the devices seized and to generate a report with timestamps indicating the dates when the content was "modified, accessed, and created" on each device. Kircher testified that the "created date" captured "when that file was copied or downloaded on to a device." After Kircher completed his forensic examination for DCI, he returned each device to the custody of the local police department.

In November 2022, less than a week before trial, another investigator on the case—Investigator Prochaska—removed the broken phone from the evidence bag and placed it down with the back cover facing up, where he "noticed a bunch of painting, writing on th[e phone's back] cover like with a paint marker" that read, "FAK PTHC rocks." Prochaska knew that "PTHC stands for, in the world of cyber crime investigation, preteen hard core." The next day, for the first time, the government notified Manning of the incriminating writing discovered on the phone cover. Manning objected to the government using the untimely disclosed evidence at trial. Over Manning's objection, the district court determined the government had not acted in bad faith and it allowed the government to offer evidence regarding the writing and its meaning.

The jury found Manning guilty of possession of child pornography after having been convicted of sexual exploitation of a minor, and the district court[2] sentenced him to 240 months of imprisonment. Manning appeals.

---

[2]The Honorable Leonard T. Strand, then Chief Judge, now United States District Judge for the Northern District of Iowa.

II.

Manning challenges two trial-related rulings: the admission of his prior Iowa conviction, pursuant to Federal Rule of Evidence 414, and the district court's choice of sanction for the government's untimely disclosure of evidence, in violation of Federal Rule of Criminal Procedure 16. We address each in turn.

A.

First, Manning argues the district court erred by not applying the categorical approach to determine whether his prior Iowa conviction for sexual exploitation of a minor was admissible under Federal Rule of Evidence 414. According to Manning, his prior conviction is not a categorical match to "child molestation" and is, therefore, not admissible under the Rule. However, we need not decide whether the categorical approach applies in this context because, even if it does, Manning's prior conviction qualifies as "child molestation" under Rule 414. See Iowa Code §§ 728.1(4), 728.12(3). See also United States v. Sonnenberg, 556 F.3d 667, 669 (8th Cir. 2009) (reviewing application of the categorical approach de novo).

"In a criminal case in which a defendant is accused of child molestation, the court may admit [relevant] evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). Rule 414(d)(2) provides a detailed definition of "child molestation" that:

[M]eans a crime under federal law or under state law . . . involving:

> (A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;
> (B) any conduct prohibited by 18 U.S.C. chapter 110;
> (C) contact between any part of the defendant's body—or an object—and a child's genitals or anus;
> (D) contact between the defendant's genitals or anus and any part of a child's body;

(E) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

(F) an attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

Fed. R. Evid. 414(d)(2). Manning does not dispute that his Iowa conviction involves "conduct prohibited by 18 U.S.C. chapter 110." See United States v. Stefanyuk, 944 F.3d 761, 763 (8th Cir. 2019) (observing that a child pornography offense falls under the definition of "child molestation" in Rule 414(d)(2)(B) because "'child molestation' includes 'any conduct prohibited by 18 U.S.C. chapter 110'" (quoting Fed. R. Evid. 414(d)(2)(B))). Instead, he focuses on Rule 414(d)(1)'s definition of "child," and its misalignment with Iowa's definition of "minor" under Iowa Code § 728.1(4). Compare Fed. R. Evid. 414(d)(1) (defining "child" as "a person below the age of 14") with § 728.1(4) (defining "minor" as "any person under the age of eighteen").

But Rule 414's definition of "child" is not relevant to whether Manning's prior "child molestation" conviction involves "any conduct prohibited by . . . Chapter 110." See Fed. R. Evid. 414(d)(2). Subdivision (d)(2) lists six separate definitions of "child molestation." Id. Four of them include the word "child." The definition that applies here, however, does not. All that is relevant under subdivision (d)(2)(B) is whether Manning's prior conviction involves "conduct prohibited by" Chapter 110. And Chapter 110 defines a "minor" as "any person under the age of [18]"—the same age cutoff in Iowa Code § 728.1(4). See 18 U.S.C. § 2256 ("Definitions for chapter"); United States v. Foley, 740 F.3d 1079, 1087 (7th Cir. 2014); United States v. Sturm, 673 F.3d 1274, 1284 (10th Cir. 2012) (concluding that the argument raised by the defendant was a "gross misunderstanding of Rule 414(d)(2)" because "child molestation" in that subdivision is defined "independent of the [definition of the] term 'child'" in Rule 414(d)(1), and as such, "the relevant age of the children victims under [the subdivision] is determined by reference to chapter 110 of title 18, which defines 'minor' as any person under the age of [18], precisely the same threshold as the Ohio statute."). Even if we apply the categorical approach, as Manning asks us to do, his prior conviction qualifies as "child molestation" under Rule 414.

B.

Second, Manning argues that the district court abused its discretion when it allowed the government to introduce evidence of the late-disclosed writing on the back cover of the broken cellphone. According to Manning, the appropriate sanction for the discovery violation was exclusion of the evidence at trial. "We review for abuse of discretion the district court's decision whether to exclude evidence to sanction a Government discovery violation." United States v. Pherigo, 327 F.3d 690, 694 (8th Cir. 2003).

Under Federal Rule of Criminal Procedure 16, when requested evidence that is material to the case is later discovered, "[the] party who discovers [it] before or during trial must promptly disclose its existence to the other party or the court." Fed. R. Crim. P. 16(c). To deter any wrongful withholding of evidence and to remedy any resultant prejudice, the district court has broad discretion to grant a continuance or to prohibit the party who failed to comply with the discovery order from introducing the evidence. See Fed. R. Crim. P. 16(d)(2); United States v. Davis, 244 F.3d 666, 670 (8th Cir. 2001). We have adopted three factors for courts to consider when imposing an appropriate sanction for untimely disclosures: (1) the reasons for the delay and whether the government acted intentionally, or in bad faith; (2) the degree of prejudice suffered by the defendant; and (3) whether the sanction is the least severe sanction likely to remedy the prejudice and address the wrongdoing. Davis, 244 F.3d at 670 (citing United States v. Hastings, 126 F.3d 310, 317 (4th Cir. 1997)); see also Pherigo, 327 F.3d at 694 (same).

Manning concedes that he has no evidence that the government acted in bad faith. He nevertheless points out that the local police department had custody of the broken phone for more than two years and yet failed to document the unusual writing on its cover during that time. But he stops short of attributing that failure to bad faith. Indeed, Investigator Anderson testified that he did not know what the writing meant, which was why he did not note it in his investigative report or on the inventory of items seized. Agent Kircher also testified that he did not notice any writing on the

phone because he was "more interested in the item itself . . . [b]ecause this is where the evidence would be located, the digital evidence."

Manning further contends the lack of timely disclosure was prejudicial because his defense at trial was "that he was not responsible for, and did not know about, the PTHC imagery downloaded on the phone's SD card," a defense undermined by evidence of "PTHC" written on the back cover of the phone. The government's late disclosure gave him no opportunity "to investigate whether the writing was even present when police seized the phone from him, and if so, why it would have been overlooked by law enforcement for more than two-and-a-half years before disclosure."

Manning has not shown that his defense was prejudiced. He declined the offer to continue trial, which would have given him the opportunity to investigate the newly discovered evidence. He did so for an understandable reason—he did not want to remain in custody longer than necessary for an offense that he maintains he did not commit. However, Manning offers no explanation for why a continuance allowing him to conduct his own investigation would not remedy the alleged prejudice to his defense. See Davis, 244 F.3d at 672 (noting that a district court can generally assume counsel did not need additional time if they do not seek a continuance (citation omitted)).

Moreover, no one testified that it was Manning's handwriting on the back cover, and Manning was not limited in his ability to cross-examine the officers about whether the writing was relevant or why it was overlooked for so long. Given the circumstances, including the other evidence linking Manning to the phone and the images of child pornography stored on it, we cannot conclude that the district court abused its discretion by not imposing the more severe sanction of exclusion of the evidence.

III.

Manning also raises two procedural challenges to his sentence. "We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error." United States v. Chambers, 878 F.3d 616, 620 (8th Cir. 2017) (per curiam) (citation omitted). "[T]he Government must prove by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement." United States v. Guzman, 926 F.3d 991, 1000 (8th Cir. 2019) (citation omitted).

A.

First, Manning challenges the application of a two-level enhancement for obstruction of justice under United States Sentencing Guidelines (USSG) § 3C1.1 (2021). Pursuant to this provision:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. The district court determined at sentencing that Manning attempted to destroy evidence when he went to his car and broke the cellphone while the officers were executing the search warrant.

Manning characterizes his conduct differently, arguing that it falls within an exception for conduct that occurs "contemporaneously with arrest." See § 3C1.1 comment. n.4(D); United States v. Welshans, 892 F.3d 566, 581 (3d Cir. 2018) (concluding that the defendant "moved files into his laptop's recycling bin in a 'panic' after his aunt called to tell him that the police were on their way to his house," and thus he "acted 'contemporaneously with arrest' for the purposes of Application

-8-

Note 4(D)"). Manning likens his attempt to break the phone to an "attempt[] to swallow or throw away a controlled substance," one of the examples provided in the commentary that would not, "standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation." See USSG § 3C1.1 comment. n.4(D).

The district court acknowledged the examples of conduct excluded from § 3C1.1, but concluded that Manning's conduct as a whole "falls somewhere above on the scale of culpability" in comparison. Relying on trial testimony, the court determined that Manning's actions were more than an impulsive response, and instead amounted to a willful attempt to destroy the phone. Moreover, Manning was not under arrest at the time he broke the phone. He had been ordered out of his car as he was backing out of the driveway and was given a copy of the search warrant— which permitted the search of electronic items in his vehicle. Investigator Anderson then seized the first cellphone from him. It was only after his residence was secured and additional officers arrived to assist in the search that Manning returned to his car, where he broke the second phone. We see no error in the district court's application of the obstruction enhancement.

B.

Next, Manning challenges the calculation of his criminal history category, asserting that the district court erred when it added two criminal history points pursuant to USSG § 4A1.1(d) (2021). This provision applies "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Id. Manning was under a criminal justice sentence until September 13, 2018, but he contends the government failed to prove that he committed any portion of the instant offense prior to that date.

At trial, the government showed the jury a small sample of the thousands of images and videos downloaded onto Manning's devices. The earliest creation date

on the exhibits presented to the jury was well after September 13, 2018—and thus, after Manning's state sentence had discharged. But Agent Kircher testified that the earliest creation date for all the child pornography found on the devices was "[a]round August of 2018." When asked about the earliest creation date for each device, Kircher followed up with: "If I recall . . . on the Western Digital it was August of 2018." Manning argues that Kircher's trial testimony is both "equivocal and uncertain," and contends it is insufficient to support a finding that he commenced the instant offense while on supervision for his prior state sentence.

At sentencing, the district court determined "that the evidence at trial did show that at least some of the criminal conduct relating to [the possession of child pornography] occurred before September 13 of 2018." It credited Kircher's testimony in arriving at this conclusion. Kircher testified to the best of his recollection that the earliest creation date for the images and videos on the hard drive was August 2018, which would have been when Manning was still serving his Iowa sentence. Kircher was the forensic examiner who examined the devices, and we discern no clear error in the district court's reliance on his testimony when calculating Manning's criminal history category at sentencing.

IV.

We affirm the judgment of the district court.

_____

-10-