# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3352

_____

United States of America

*Plaintiff - Appellee*

v.

Jerell Wilson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: September 27, 2024
Filed: December 2, 2024

_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Jerell Wilson was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Wilson unsuccessfully moved to dismiss the indictment and for acquittal. The district court[1] sentenced Wilson to 96 months'

_____

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

imprisonment. Wilson appeals his conviction, sentence, and the denial of his motion to dismiss. We affirm.

## I.    BACKGROUND

On June 9, 2022, Katrina Barnes shot and killed Dolorean Wade outside of a residence in Sioux City, Iowa. While investigating Wade's death, law enforcement officers received information that Wilson came and went from the residence the day of Wade's death and that he had taken the weapon used in the homicide. Officers obtained and executed a search warrant at Wilson's residence. During the search, officers seized a Smith and Wesson .40 caliber handgun, various types of ammunition, and a "Coach" bag.

Wilson was charged with being a felon in possession of a firearm—specifically, the .40 caliber handgun found at his residence—in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A jury convicted Wilson on the charge. Both at trial and at sentencing, there was extensive discussion about the shooting that caused Wade's death. At the scene, law enforcement found one spent 9mm casing and a bullet hole in the door of the residence but no firearms inside the residence. The evidence indicated that Wilson was not directly involved in the shooting, but it also showed that he was subsequently called, came to the scene, ran up to the front porch, and retrieved and left with the weapon used in the shooting, which has never been found.

Wilson first appeared in court on the charge on August 17, 2022. Almost immediately, Wilson disagreed with his counsel. Less than a month into the pretrial proceedings, Wilson informed the court that he wished to dismiss his counsel and proceed *pro se*. Shortly thereafter, his counsel requested a status conference to inform the court that Wilson did not want a continuance and that he wished to represent himself. At a hearing the following day, the court granted Wilson's request to discharge counsel and appointed new counsel to represent him. Four days later, Wilson's new lawyer moved for a continuance on the ground that he had not yet

-2-

received discovery from the government or spoken with Wilson. The court granted a continuance and reset the trial for December 19, 2022, specifically finding that the ends of justice warranted a continuance and excluding the time from September 20, 2022 (the date of the motion) until the new trial date under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(7)(A). Several days later, Wilson wrote a letter to the court requesting an attorney that could try the case in 2022. The court set the matter for a hearing, reviewed Wilson's concerns, and denied his request.

On November 9, 2022, defense counsel requested a firm trial date in early 2023. Five days later, Wilson wrote to the court reiterating his desire to represent himself. The court held a hearing on November 17, 2022, at which the parties discussed both requests. Based on the court's observations of Wilson at the hearing, other information Wilson had submitted, and additional information in the record, the court held in abeyance Wilson's request to proceed *pro se* and ordered a competency examination under 18 U.S.C. § 4241(b). The court excluded time under the Speedy Trial Act pending a competency hearing and conclusion. The court did not make ends-of-justice findings.

The court's order provided the government 30 days with which to conduct an evaluation. The government requested more time to complete Wilson's evaluation, citing transport delays. Wilson opposed that request. The court found the issue moot, since it did not order Wilson be transported in a particular amount of time. Even so, the court cautioned the government that unreasonable transportation delays might not be excludable under the Speedy Trial Act.

The court received Wilson's psychiatric report on February 14, 2023. On March 24, 2023, the magistrate judge found that Wilson had been returned to the Northern District of Iowa and set a competency hearing for March 28, 2023. At the conclusion of the hearing, the court found Wilson competent to stand trial and set the trial date for May 1, 2023. The court found no basis under the Speedy Trial Act to exclude the time from March 28 until May 1, 2023. The court also reconsidered and denied Wilson's November 2022 request to proceed *pro se*.

In early April 2023, Wilson moved to dismiss the indictment on the ground that his Speedy Trial Act rights had been violated. Because the motion was pending before the magistrate judge and after accounting for the time allowed for objections, the magistrate judge continued the trial to May 22, 2023, and excluded the time between the filing of the motion and disposition (not to exceed 30 days) under 18 U.S.C. § 3161(h)(1)(D), (H). On May 2, 2023, the magistrate judge filed a 23-page report and recommendation. The magistrate judge, while recognizing the interplay between exclusions for continuances, pretrial motions, competency proceedings, and transportation delays, recommended Wilson's motion be denied because only 64 days had elapsed on the speedy trial clock. Both parties objected. Two weeks later, the district judge adopted the report and recommendation in its entirety and denied Wilson's motion to dismiss.

Wilson ultimately proceeded to trial on May 22, 2023. The trial was beset with problems. Wilson refused to leave his cell to appear at trial. The court ordered the United States Marshals Service to bring Wilson to court and he appeared an hour later. Wilson refused to discuss his presence at court or his preference to appear in street clothes or the jail uniform he was wearing. After jury selection began, Wilson asked to leave. The court permitted him to do so, finding that Wilson knowingly and voluntarily waived his right to be present and that the public interest in proceeding with trial outweighed Wilson's interest in being present.

The trial was conducted over three days. Defense counsel unsuccessfully moved for a judgment of acquittal at the close of the government's case and again at the close of his case. Following the jury's verdict, Wilson filed a post-trial motion once again seeking an acquittal based on insufficient evidence. Wilson argued the government failed to identify him in court. He also renewed his motion to dismiss for violating his rights under the Speedy Trial Act. The district court denied his motion, noting all jurors saw Wilson at the beginning of jury selection, there was a photo of Wilson introduced as evidence, other witnesses testified about who was involved in the offense, and sufficient evidence was presented for a jury to find

-4-

Wilson had unlawfully possessed a firearm. The court also rejected Wilson's speedy trial arguments, explaining they had previously been considered and rejected.

Wilson objected to the presentence investigation report ("PSR") prepared for sentencing, arguing, among other things, that a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for possession of between three and seven firearms was inappropriate. The court resolved Wilson's objections and determined that with a total offense level of 22 and criminal history category IV, Wilson's advisory Sentencing Guidelines range was 63 to 78 months. The court also found that Wilson retrieved and hid the firearm used to kill Wade. Based on this fact and other aggravating conduct, the court granted the government's motion for an upward variance and imposed a 96-month term of imprisonment. The court specifically noted that it would impose the same sentence regardless of the Sentencing Guidelines range, unless its finding that Wilson retrieved and hid the firearm used to kill Wade was overturned. Wilson appeals.

## II.    DISCUSSION

On appeal, Wilson presents four arguments. First, he contests the district court's speedy trial ruling. Second, Wilson asserts the evidence was insufficient to convict him based on the failure to identify him in court. Third, he renews his objections to the PSR. Finally, Wilson contends the sentence was substantively unreasonable. We discuss the issues in turn.

### A.    The Speedy Trial Act

When a district court denies a motion to dismiss on Speedy Trial Act grounds, we review its legal conclusions *de novo* and its ultimate Speedy Trial Act ruling for an abuse of discretion. United States v. Grady, 88 F.4th 1246, 1255 (8th Cir. 2023). A district court's finding that a continuance would best serve the ends of justice is a factual determination that we review for clear error. Id.

An ends-of-justice continuance is one exception in the Speedy Trial Act, which ordinarily requires a trial to begin within 70 days of the filing of an information or indictment, or the defendant's initial appearance, whichever occurs last. 18 U.S.C. § 3161(c)(1). Other exceptions apply automatically, like those for delay caused by pretrial motions, id. § 3161(h)(1)(D), competency proceedings, id. at § 3161(h)(1)(A), and transportation, id. at § 3161(h)(1)(F); see also Bloate v. United States, 559 U.S. 196, 199 (2010). Unlike these automatic exceptions, an ends-of-justice continuance under § 3161(h)(7) must flow from specific findings. Bloate, 559 U.S. at 199.

Wilson argues that § 3161(h)(1)(F) overrides § 3161(h)(7), such that the district court's competency order terminated its preexisting ends-of-justice continuance. However, two structural signs in the Speedy Trial Act indicate that an automatic exclusion under Section 3161(h)(1)(F) does not displace an ends-of-justice continuance under Section 3161(h)(7). The sections use distinct mechanisms, and they address different types of delay.

Section 3161(h)(1) applies automatically while § 3161(h)(7) requires specific judicial findings. United States v. Porchay, 651 F.3d 930, 938 (8th Cir. 2011); see also Henderson v. United States, 476 U.S. 321, 327 (1986). To lessen the temptation to continue a trial without a demonstration of specific need while also providing a judge with flexibility to accommodate unusual, complex, and difficult cases, Congress, under § 3161(h)(7), required a judge to make specific findings to support its decision to continue a trial. See Zedner v. United States, 547 U.S. 489, 508 (2006). In contrast, § 3161(h)(1) addresses "delay resulting from other proceedings," including, for instance, interlocutory appeals, pretrial motions, and plea agreements. Each subsection in the Speedy Trial Act serves a distinct purpose. In short, contrary to Wilson's argument, the provisions can apply concurrently, with § 3161(h)(1)(F) excluding certain delays automatically and § 3161(h)(7) exceeding those limits, if the requisite findings are made.

Wilson also argues that he can show a Speedy Trial Act violation by relying on the time it took for him to return to the district following completion of his competency examination. Wilson's psychological evaluation was complete as of February 13, 2023, but the Marshals Service did not begin transporting him back to Iowa until a transportation order was entered. Section 3161(h)(1)(H) "clearly starts the clock on the date of an order directing transportation." United States v. McGhee, 532 F.3d 733, 738 (8th Cir. 2008). The Speedy Trial clock resumed when the transportation order was entered on February 21, 2023. The Marshals Service subsequently began transporting Wilson on March 1 and he arrived in the District of Iowa on March 24. The court found that ten days for transportation is presumed reasonable and the government failed to show the delay beyond that period—from March 3 through March 24—was excludable for speedy trial purposes. Four days later, the court held a competency hearing and ruled on the pending motions, which started the speedy trial clock again. On April 5, Wilson filed a motion to dismiss, which stopped the speedy trial clock until the court entered its order resolving the motion on May 17, 2023.

After review of the record, the district court did not abuse its discretion in its calculation of excludable time under the Speedy Trial Act. Further, Wilson's trial began four days after the district court entered its order denying Wilson's motion to dismiss the indictment. Including the four days between resolution of the motion and the date trial commenced, there are a total of 68 non-excludable days. Under these facts and circumstances, Wilson has not shown a violation of the Speedy Trial Act. See 18 U.S.C. § 3161(c)(1). Because there was no Speedy Trial Act violation, we decline the government's invitation to consider other arguments as to why Wilson's speedy trial rights were not violated.

B.    Judgment of Acquittal

The district court denied Wilson's motion for judgment of acquittal, finding the evidence sufficient for the jury to conclude that he committed the charged offense. We review this decision de novo. United States v. Garrett, 103 F.4th 490,

497 (8th Cir. 2024). In doing so, we view the record in the light most favorable to the verdict, accept all reasonable inferences that support the verdict, and reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt. Id. at 497-98.

Several witnesses tied Wilson to a particular bag. The bag was visible in several of the government's videos, and at least one witness confirmed that Wilson was the person in those videos. Moreover, an officer matched a photo of Wilson from his arrest with the officer's surveillance activities. Other witnesses, including Wilson's mother, had an opportunity to clarify any mistaken identity. Given this evidence, a reasonable jury could infer that Wilson was the person charged in the indictment and described by witnesses at trial. As to the firearm underlying the charge, several witnesses linked Wilson to a distinct black and silver handgun like the one seized from Wilson's house. The government also recovered photos of a black and silver handgun from Wilson's cell phone. There is more than sufficient evidence in the record for a reasonable jury to find that Wilson was the person on trial and that he possessed the firearm referenced in the indictment.

Wilson also asserts that we should adopt an alternative rule—one which would always require the defendant's in-court identification. To do so would create an unnecessary conflict between two longstanding principles: a defendant may voluntarily absent himself from a noncapital trial, see Crosby v. United States, 506 U.S. 255, 260 (1993), and the government's burden to establish that the person on trial is the person in the indictment, United States v. Gilmore, 730 F.2d 550, 554 (8th Cir. 1984) (noting that by pleading not guilty, a defendant puts the government to its proof on all elements of the charged offense, including identity). The first principle cannot swallow the second, such that a defendant could defeat a prosecution by refusing to appear for trial. See United States v. Lumitap, 111 F.3d 81, 84 (9th Cir. 1997) (exploring this concept). Because there was ample evidence in the record to establish beyond a reasonable doubt that Wilson was the person charged in the indictment and portrayed in the government's evidence, the district court did not err when it denied Wilson's motion for judgment of acquittal on identity grounds.

C.     Sentencing Issues

We review a district court's factual findings supporting its Sentencing Guidelines calculation for clear error and its application of the Guidelines *de novo*. United States v. Stimac, 40 F.4th 876, 880 (8th Cir. 2022).  The district court found by a preponderance of the evidence that U.S.S.G. § 2K2.1(b)(1)(A), which provides for a two-level increase if three to seven firearms were possessed, applied based on its review of the trial evidence plus the evidence presented at sentencing.  See United States v. Manning, 106 F.4th 796, 801 (8th Cir. 2024) (noting the government bears the burden of proving by a preponderance of the evidence the facts necessary to apply a sentencing enhancement).  Wilson contends the district court erred because one witness the government relied on was not credible and another failed to provide reliable information.

The jury found Wilson guilty of possessing the .40 caliber firearm seized by law enforcement from his home.  The trial record contains witness testimony, which was corroborated by surveillance video, indicating that Wilson took the 9-milimeter weapon used to kill Wade from the crime scene.  In addition to these two handguns, the record contains evidence from two witnesses who saw Wilson in possession of a long gun.  The district court did not clearly err when it found Wilson possessed at least three firearms and applied the two-level enhancement under § 2K2.1(b)(1)(A).  See United States v. Austin, 255 F.3d 593, 598 (8th Cir. 2001) (noting that when reviewing the imposition of a sentencing enhancement, we will not question a district court's assessment of witnesses' credibility).

After calculating Wilson's Sentencing Guidelines range, the district court granted the government's motion for an upward variance and imposed a 96-month sentence.  We review the substantive reasonableness of a sentence as well as a district court's decision to vary upward from the applicable Sentencing Guidelines range under the deferential abuse of discretion standard.  United States v. Ridings, 75 F.4th 902, 907 (8th Cir. 2023).

The district court varied upward after considering Wilson's aggravating conduct. Among other things, it found that Wilson retrieved a still-missing weapon used in a killing and attempted to have a witness recant. The district court weighed these facts in addition to the sentencing factors listed in 18 U.S.C. § 3553(a). Wilson contends the district court failed to fully consider the mitigating nature of his upbringing, past difficult life circumstances, and his mental health, but a district court's weighing of certain sentencing factors more heavily than others does not amount to an abuse of the district court's broad sentencing discretion. United States v. Richart, 662 F.3d 1037, 1054 (8th Cir. 2011). The district court explained the bases for the variance and Wilson has not shown the court abused its discretion. See Ridings, 74 F.4th at 907 (stating "a district court's rationale for granting a variance need not be extraordinary, only substantively reasonable") (cleaned up). Nor has Wilson shown that the sentence imposed is substantively unreasonable.

## III.  CONCLUSION

We affirm the judgment of the district court.

_____