# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3300

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Albert Curry, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2003

Filed: May 6, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Albert Curry was indicted on one count of sexual abuse in violation of 18 U.S.C. §§ 1153 and 2242. At the close of the government's case in chief, Curry moved for a mistrial, citing prosecutorial misconduct. The district court[1] reserved ruling on the motion. After the jury found him guilty, Curry again moved for a mistrial and for a new trial, alleging additional incidents of prosecutorial misconduct. The district court granted the motions. Shortly before his second trial was scheduled

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

to commence, Curry moved to dismiss the indictment on double jeopardy grounds. The district court denied the motion, and we affirm.

"As a general matter, a district court's order denying a defendant's motion to dismiss on double jeopardy grounds is a 'final decision' and [is] appealable under 28 U.S.C. § 1291." United States v. Kress, 58 F.3d 370, 373 (8th Cir. 1995) (citing Abney v. United States, 431 U.S. 651 (1977)). We have stated, however, that such an order is appealable "only if a colorable claim is made." United States v. Grabinski, 674 F.2d 677, 678 (8th Cir. 1982) (en banc) (per curiam). "A colorable claim requires a showing of previous jeopardy and the threat of repeated jeopardy." United States v. Abboud, 273 F.3d 763, 766 (8th Cir. 2001) (citing Grabinski, 674 F.2d at 679). To aid our review, we have asked district courts, "as a matter of practice whenever a motion to dismiss an indictment on double jeopardy grounds is denied, to make written findings on the issue of whether the motion is frivolous or non-frivolous." United States v. Dixon, 913 F.2d 1305, 1309 (8th Cir. 1990) (citing Grabinski, 674 F.2d at 679). If the district court finds the defendant's motion to be frivolous, the filing of a notice of appeal will not divest the district court of jurisdiction, and we will then review the appeal on an expedited schedule. Grabinski, 674 F.2d at 679.

We see nothing in the record indicating that the district court entered a written finding as to whether Curry's double jeopardy motion was frivolous. The record, however, does demonstrate that jeopardy attached in the first trial. "[J]eopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence." Dixon, 913 F.2d at 1309 (alteration in original) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977)); see also Kress, 58 F.3d at 373 (rejecting government's claim that the lack of a specific written finding by district court as to frivolousness divests appellate court's jurisdiction). We are therefore satisfied that Curry has alleged a colorable double jeopardy claim.

Accordingly, we have jurisdiction to review the merits of this claim. See Dixon, 913 F.2d at 1309; Grabinski, 674 F.2d 680.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." Oregon v. Kennedy, 456 U.S. 667, 671 (1982) (footnote omitted). "The double jeopardy doctrine, however, does not prevent all retrials after jeopardy attaches." United States v. Givens, 88 F.3d 608, 611 (8th Cir. 1996). When a defendant moves for a mistrial, the doctrine does not bar retrial unless the prosecutor intentionally engaged in conduct designed to provoke the defendant's motion. United States v. Washington, 198 F.3d 721, 724 (8th Cir. 1999); Kennedy, 456 U.S. at 673-76. Thus, "[a]bsent intent to provoke a mistrial, a prosecutor's error in questioning a witness, improper remark in a closing statement, and even extensive misconduct do not prevent reprosecution." United States v. Beeks, 266 F.3d 880, 882 (8th Cir. 2001) (per curiam) (citations omitted).

In granting Curry's motion for a mistrial, the district court identified three instances of prosecutorial misconduct. The court first found that the prosecutor improperly withheld material impeachment evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). See United States v. Nelson, 970 F.2d 439, 442 (8th Cir. 1992) ("Brady requires disclosure of all material evidence favorable to the accused, whether impeachment or exculpatory evidence, in the possession of the United States."). The court then determined that the prosecutor had made two improper and prejudicial comments during closing argument. Noting that the government's case was "not overwhelming," the court concluded that a new trial was warranted.

In denying Curry's motion to dismiss the indictment, the district court first considered the Brady violation. Citing our decision in United States v. Washington, 198 F.3d 721, 725 (8th Cir. 1999), the court found that "it [was] highly unlikely that the government created the pretrial discovery error to halt a trial that was not going

well." The court also found that the prosecutor's improper remarks during closing argument showed no intent to provoke a mistrial, as "[t]his [was] not a case . . . that was progressing badly for the government," and "[t]he government had no reason to believe that the evidence would improve in a second trial." The court therefore concluded that because the prosecutor did not engage in misconduct with the intent to "goad" Curry into moving for a mistrial, the Double Jeopardy Clause did not bar a retrial. See Kennedy, 456 U.S. at 676.

Despite Curry's suggestion to the contrary, "[w]e will uphold the district court's finding of prosecutorial intent unless clearly erroneous." Washington, 198 F.3d at 724 (citation omitted); see Beeks, 266 F.3d at 883. While acknowledging that the Brady violation, alone, may not be sufficient to demonstrate improper prosecutorial intent, Curry contends that this violation "was one part of a larger pattern of misconduct that should [be] considered as a whole." Curry also contends that the district court erred by failing to consider "the advantages that the government would have in a second trial," including the government's opportunity to introduce additional Rule 413 evidence. See Fed. R. Evid. 413 (providing that in criminal sexual assault cases, "evidence of the defendant's commission of another offense or offenses of sexual assault is admissible"); see also Dkt. Report at 71-76 (government's notices pursuant to Rule 413). According to Curry, the government knew prior to his first trial that "other Rule 413 allegations were being investigated and may be forthcoming." Thus, Curry concludes, the mistrial afforded the government a significant advantage from which improper prosecutorial intent should be inferred.

Although the government's case may well be strengthened by the additional Rule 413 evidence, a new trial may also expose significant weaknesses in the government's proof. The district court determined that the government violated Brady by failing to disclose impeachment evidence relating to the credibility of a witness. As the district court noted in granting a mistrial, the government's case

hinged on the credibility of this individual, as she was the only prosecution witness who testified regarding the key issue: whether the victim was capable of consenting to a sexual act with Curry. (See also Tr. of Government's Closing Argument at 337:2-6 ("[This witness] was never impeached; that is, she was never--nothing she ever said was contradicted either on cross-examination or on the defense's case. I submit to you, her testimony was very critical if not the most critical in this case.")) In his second trial, Curry will have the opportunity to impeach this witness with her prior statements. Given these circumstances, we are not persuaded that the "advantages" cited by Curry undermine the district court's finding regarding the prosecutor's intent. Likewise, after considering the three incidents of prosecutorial misconduct as a whole, we cannot find that the district court's finding was clearly erroneous.

Curry also contends that the district court erred by denying his request for an evidentiary hearing "to further develop the record concerning the prosecutor's intent." The district court concluded that because it had heard the trial and was familiar with the objective facts and circumstances of the case, a hearing was not necessary. Kennedy, 456 U.S. at 675 (noting that the standard it adopted "merely calls for the court to make a finding of fact," and that "[i]nferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system"). We see no reason to disagree. See, e.g., United States v. White, 914 F.2d 747, 752 n.1 (6th Cir. 1990) (rejecting defendant's claim that when a non-frivolous motion to dismiss on double jeopardy grounds is made, the court must grant an evidentiary hearing); United States v. Wentz, 800 F.2d 1325, 1328 (4th Cir. 1986) ("If there existed a genuine question in the mind of the court about whether the prosecutor had deliberately goaded [the defendant] into moving for a mistrial, an evidentiary hearing should have been held before the second trial, not afterward."); cf. United States v. Pavloyianis, 996 F.2d 1467, 1474-75 (2d Cir. 1993) (rejecting defendant's contention that an evidentiary hearing was required to determine whether the prosecutor engaged in misconduct with the intention of avoiding what he viewed

as a likely acquittal, as "[n]o rule of law requires a hearing in this sort of case where the relevant facts can be ascertained from the record" (citation omitted)). Thus, for the reasons discussed above, we conclude that the district court did not err by denying Curry's motion to dismiss the indictment.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.