# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1989

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Allan Dimarco, | * | Northern District of Iowa. |
| | * | |
| Appellee. | * | [UNPUBLISHED] |

_____

Submitted: November 18, 2004
Filed: February 7, 2005

_____

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

_____

PER CURIAM.

Allan Dimarco was convicted by a jury of conspiracy to distribute 50 grams or more of methamphetamine, knowing and intentional distribution of methamphetamine, and possession of methamphetamine with intent to distribute. We affirm.

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.

**I.**

Dimarco contends that the evidence presented at trial was insufficient to support his conspiracy conviction, and thus the district court[2] erred by refusing to grant his motion for judgment of acquittal. The Court will reverse a denial of a motion for acquittal only if, after viewing the evidence in the light most favorable to the jury's verdict, and giving the government the benefit of all reasonable inferences that may be drawn from the evidence, we find no construction of the evidence will support the jury's verdict. *United States v. Beltz*, 385 F.3d 1158, 1163 (8th Cir. 2004).

To prove a conspiracy to distribute methamphetamine, the government must prove beyond a reasonable doubt: 1) that there was an agreement to distribute methamphetamine; 2) that Dimarco knew of the agreement; and 3) that Dimarco knowingly participated in the conspiracy. *United States v. Morreno*, 373 F.3d 905, 912 (8th Cir. 2004). Viewed in the light most favorable to the verdict, the government's evidence was sufficient to sustain the jury's finding that Dimarco participated in a conspiracy. On December 18, 2002, Angelina Malfero, a government informant, went to Tammy Peters' apartment to purchase an "eightball"[3] of methamphetamine. Peters informed Malfero that she had only 1 gram of methamphetamine on hand, but that if Malfero returned later that evening Peters would obtain the remaining amount from Dimarco. When Malfero returned to Peters' apartment, Peters made a telephone call and Dimarco arrived shortly after. Dimarco sold Malfero two 1/16 ounce packages of methamphetamine for $200. In addition to those Dimarco sold Peters, Malfero observed Dimarco holding other baggies that contained a white substance that she believed was also methamphetamine. Shortly after purchasing the methamphetamine, Malfero met with Officers David Hepperly

---

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

[3]An "eightball" is 1/8 ounce.

and Dave Tyler of the North Central Iowa Narcotics Task Force to relay what had transpired at Peters' apartment. Malfero was searched by the officers before and after the controlled buys. According to the officers, Malfero entered the controlled buys without methamphetamine and returned with methamphetamine.

On January 8, 2003, Peters arranged for Malfero to purchase another "eightball" of methamphetamine from Dimarco. During the controlled buy at his apartment, Dimarco told Malfero that the transaction was Peters' deal because she had arranged it.

Approximately a month later, Malfero returned to Dimarco's apartment to purchase more methamphetamine. On February 14, 2003, Dimarco sold Malfero 1.14 grams of methamphetamine for $100 and indicated that was all he had but that he would have more that evening. Based on the December, January, and February controlled buys, officers applied for a search warrant for Dimarco's apartment. The warrant was executed on February 20, 2003. During the search of Dimarco's home, the officers discovered 83.15 grams of methamphetamine and drug paraphernalia. Based on the record, a reasonable jury could have found that Dimarco conspired with Peters to distribute over 50 grams of methamphetamine.

Next, Dimarco argues that there was insufficient evidence to support the jury's determination that he supplied Malfero with the methamphetamine that she provided to the officers after each controlled buy. To convict Dimarco of distributing methamphetamine, the government must prove beyond a reasonable doubt, first, that Dimarco intentionally transferred a controlled substance to Malfero and, second, that, at the time of the transfer, Dimarco knew that it was a controlled substance. 21 U.S.C. § 841(a)(1); *United States v. Pruitt*, 487 F.2d 1241, 1243 (8th Cir. 1973). At the trial, Malfero testified that she had purchased methamphetamine from Dimarco on December18, 2002, January 8, 2003, and February 14, 2003. As noted above, officers who conducted surveillance of all three controlled buys testified that Malfero

entered the controlled buys without methamphetamine, but when she returned, she possessed methamphetamine, a controlled substance. For various reasons, Dimarco contends that this testimony is not credible; but the jury found it to be credible. It is not the role of this Court to judge the credibility of witnesses. *United States v. Dabney*, 367 F.3d 1040, 1043 (8th Cir. 2004) (citing *United States v. Hill*, 249 F.3d 707, 714 (8th Cir.2001) ("Witness credibility is within the province of the jury, which we are not allowed to review.")). Based on the jury's credibility determinations, there is sufficient evidence to support a reasonable jury's finding that Dimarco was guilty of distributing methamphetamine.

Finally, Dimarco contends that the jury erred in finding that he possessed methamphetamine with the intent to distribute. To establish a violation of 21 U.S.C. § 841(a)(1), the government had to prove beyond a reasonable doubt that Dimarco knowingly possessed and intended to distribute the methamphetamine found in his home. *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004) (citing *United States v. Sanchez*, 252 F.3d 968, 972 (8th Cir. 2001). The evidence supports the jury's verdict that Dimarco knowingly possessed methamphetamine and intended to distribute it: Dimarco lived in the apartment where the Task Force seized a large amount of methamphetamine and over $10,500 in cash; officers discovered counter-surveillance equipment in the apartment including a night vision scope, a "bug" detector used to determine if someone was wearing a police wire, and a police scanner; officers also found plastic baggies and other packaging material used for distribution; and an officer testified that the large amount of methamphetamine seized was consistent with redistribution. When viewed in the light most favorable to the verdict, there is sufficient evidence to support the jury's verdict that Dimarco knowingly possessed methamphetamine with the intent to distribute.

## II.

For the foregoing reasons, we affirm the judgment of the district court.

_____