# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3763

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Misael Benitez, also known as | * | |
| Benitez Arguello Paulo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 29, 2008
Filed: July 15, 2008

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case is once again before us following our remand for *de novo* review by the district court[1] of the magistrate judge's[2] report and recommendation regarding

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

[2]The Honorable Audrey G. Fleissig, United States Magistrate Judge for the Eastern District of Missouri.

Misael Benitez's motion to suppress evidence. <u>United States v. Benitez</u>, 244 Fed. Appx. 64 (8th Cir. 2007).

After conducting such a review, the district court entered an order that reaffirmed its earlier order denying the motion. We now affirm.

As indicated in our earlier opinion, Benitez was convicted of possessing and conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a) and 846 and was sentenced to 135 months' imprisonment.

On the morning of April 11, 2006, as St. Charles, Missouri, police officer Grant Jansen was parked on the eastbound shoulder of Interstate 70, he observed a Chevrolet Suburban, which was towing a Mercury Cougar, pass his vehicle at what appeared to be an excessive rate of speed. Officer Jansen gave chase and, after determining that the Suburban was traveling between 70 and 80 miles per hour in a 60 mile per hour zone, activated his emergency lights and conducted a traffic stop.

Officer Jansen testified that he activated his emergency lights as he approached the bridge over the Missouri River at a point at which he was still in St. Charles County, and that there was insufficient road shoulder room remaining to pull Benitez's vehicle over before entering the bridge, with the result that Benitez brought his vehicle to a stop shortly after he exited the east side of the bridge, which was at a point in St. Louis County.

Officer Jansen testified that he had no difficulty in understanding the answers that Benitez (who is Hispanic and whose first language is Spanish) gave in response to his questions. Benitez's answers, lacking as they were in detail concerning the ownership of the Suburban and how and from where he had acquired possession of the Cougar caused Officer Jansen to suspect that criminal activity was being carried out. He asked Benitez whether he was carrying any illegal contraband in the vehicle,

to which Benitez replied, "No, if you want to search, go ahead." Officer Jansen informed Benitez that he wanted to search the vehicles and advised him that he had the right to refuse to consent to a search, to which Benitez indicated that he understood and then responded, "Go ahead. Tear it up." Officer Jansen then called for backup assistance, and some six or seven officers ultimately arrived at the scene.

Officer Jansen retrieved his drug dog, who alerted to the Cougar's glove compartment but which contained nothing. By this time, the vehicles had been parked by the side of the road for approximately thirty minutes, so the officers decided to move them to a different location, a decision with which Benitez agreed. The vehicles were driven to the nearest exit, approximately one-fourth of a mile away, and then later to a parking lot another fourth of a mile farther away.

A search of the Suburban revealed five packages, the on-scene field-testing of which revealed the presence of methamphetamine, hidden between the grille and the radiator. By this time an additional thirty to sixty minutes had elapsed.

Benitez was turned over to the custody of the Drug Enforcement Agency (DEA) and taken to the Agency's headquarters in St. Louis, where he was advised of his Miranda rights both in English and in Spanish by a Spanish-speaking DEA agent before being questioned further.

I.

Benitez contends that because the stop was effected at a point beyond the limits of Officer Jansen's territorial jurisdiction, it was unlawful and therefore could not serve as the basis of a valid search. We do not agree, for the district court found that Officer Jansen activated his emergency lights as he approached the entrance to the bridge and at a point when he was still within the confines of St. Charles County and thus initiated the traffic stop therein. In any event, Jansen was authorized to continue

in his efforts to apprehend Benitez under the doctrine of fresh pursuit, as provided by Missouri law. See Mo. Rev. Stat. § 544.157; see also City of Ash Grove v. Christian, 949 S.W.2d 259 (Mo. App. 1997). Moreover, if there was any question about Jansen's extraterritorial authority to make the stop, we believe that it was answered by the Supreme Court's recent decision in Virginia v. Moore, 128 S. Ct. 1598 (2008).

Benitez argues that even if the initial stop was valid, it was unduly prolonged in length, rendering the evidence obtained therein inadmissible. We do not agree. Benitez's consent was obtained relatively soon after the initial stop, validating the search that occurred after the vehicles had been moved to a less hazardous location. See United States v. Esquivel, 507 F.3d 1154, 1158 (8th Cir. 2007) (unnecessary to address contention of excessive length and scope of stop in light of defendant's consent to search), citing United States v. Grajeda, 497 F.3d 879, 882 (8th Cir. 1997); United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001).

Likewise, we reject Benitez's challenge to the district court's finding that he had knowingly and voluntarily consented to the search of the vehicles, a determination that we review for clear error. United States v. Hines, 387 F.3d 690, 694 (8th Cir. 2004) (holding voluntariness of consent to search to be a question of fact subject to clearly erroneous standard of review).

Benitez, who was of legal age, did not appear to be under the influence of alcohol or drugs at the time. He was not subjected to any threats or intimidation, no promises or misrepresentations were made to him, and his consent was obtained relatively soon after having been detained. As indicated earlier, Officer Jansen testified that he had no difficulty in understanding Benitez's answers to the questions posed to him. In addition, one of the DEA agents who questioned Benitez at the scene testified that he spoke in English to Benitez, had no difficulty in understanding him, and did not doubt that Benitez could speak English, adding, "I was impressed with how free flowing [Benitez's English] was." Given this evidence, we conclude that the

district court did not err in finding that Benitez's consent to search was knowingly and voluntarily given.

## II.

Benitez contends next that the district court erred in admitting evidence of his prior conviction for possession of cocaine. He argues that that evidence was not probative of his knowledge or intent with respect to the possession of methamphetamine charge and thus should have been excluded under Rule 404(b) of the Federal Rules of Evidence because it bore only upon his bad character. We do not agree, for Rule 404(b) is a rule of inclusion rather than exclusion, rendering admissible evidence of other crimes relevant to any issue at trial other than an accused's criminal disposition. See, e.g., United States v. Fletcher, 322 F.3d 508, 518-19 (8th Cir. 2003). We review for abuse of discretion rulings admitting Rule 404(b) evidence and will reverse only when such evidence clearly had no bearing on the issues in the case and was introduced solely to prove the defendant's propensity to commit criminal acts. See, e.g., United States v. Foster, 344 F.3d 799, 801 (8th Cir. 2003). We find no such abuse of discretion here. True, defendant's prior conviction was for possession of cocaine rather than methamphetamine, but we do not believe that distinction to be of any importance given that both substances are illegal. See United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006). Moreover, in contrast to the situation in Cook, Benitez's prior drug offense had occurred less than one year prior to the present offense and thus was not remote in time. Although the prior offense did not involve the substantial quantity of drugs involved in the present case, evidence of prior possession of even personal-use quantities of drugs is admissible as evidence of knowledge and intent in a drug distribution prosecution. See, e.g., United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002); United States v. Logan, 121 F.3d 1172, 1178 (8th Cir. 1997).

III.

Benitez challenges the sufficiency of the evidence, arguing that the government introduced no evidence showing that he had knowledge of the presence of the methamphetamine within the vehicle or that he was a party to any conspiracy to distribute it. We do not agree, for when viewed in the light most favorable to the verdict, as it must be, see, e.g., United States v. Turk, 21 F.3d 309, 311 (8th Cir. 2004), we cannot say that no reasonable trier of fact could find Benitez guilty beyond a reasonable doubt. See, e.g., United States v. Rasteger, 472 F.3d 1032, 1035 (8th Cir. 2007).

To establish a charge of conspiracy to distribute drugs, the government must prove (1) that there was an agreement to distribute; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy. United States v. Hester, 140 F.3d 753, 760 (8th Cir. 1998). A defendant's knowledge is generally established through circumstantial evidence, United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994), and no direct evidence of an explicit agreement need be introduced to prove a conspiracy, since a tacit understanding may be inferred from circumstantial evidence. United States v. Judon, 472 F.3d 575, 582 (8th Cir. 2007).

During the initial questioning by Officer Jansen at the scene of the traffic stop, Benitez said that he was returning to Indianapolis, Indiana, from Denver, Colorado, where he had gone to pick up the Cougar; that he had gotten the Cougar for free; and that he didn't remember the person who had given him the car or where in Denver he had picked it up. Benitez then corrected his account by saying that it was his wife who had sent him to Colorado to pick up the car. He also said that he had gone to Denver to pick up some new rims and tires for a vehicle, although he could remember neither the name of the person from whom he had gotten them nor the location at which he had picked them up.

During his later interrogation by the Spanish-speaking DEA agent, Benitez said that he had met a Hispanic male named Trampas in Indianapolis a couple of months earlier. He was aware that Trampas had a lot of money and that he was part of a drug trafficking organization. Trampas provided Benitez with the title to the Cougar and gave him $600 in cash to make the trip. Trampas instructed Benitez to deliver the Cougar to a certain location in Indianapolis, known by Benitez to be occupied by a white male who had used the term "helio," a Spanish street term for crystal methamphetamine, during a conversation with Benitez on an earlier occasion.

Upon arriving in Denver, Benitez met a man by the name of Jose, who asked him to leave the Suburban where he had parked it at a service station while the two men went to dinner. Upon returning less than an hour later, Benitez observed that a car-towing trailer bearing the Cougar had been hooked up to the Suburban, whereupon he started out on his return trip to Indianapolis.

The five packages found hidden in the Suburban were determined to contain a total of 5.4 kilograms of crystal methamphetamine having a street value of some $540,000. The government introduced expert testimony that all crystal methamphetamine, which requires a more elaborate method of manufacturing than powder methamphetamine, is manufactured in Mexico and then transported to stash houses in cities in this country, from where it is transported by couriers to distribution points throughout the nation.

We conclude that, when viewed in its entirety, the evidence is sufficient to support the jury's finding that Benitez was aware of the drugs hidden in the Suburban and that he participated in a conspiracy to distribute them.

This is not an innocent-passenger case, cf. United States v. Stanley, 24 F.3d 1314 (11th Cir.1994), but rather one in which a person having prior experience with the possession of illegal drugs accepts an assignment from a known drug trafficker to

drive to a distant city to pick up and deliver a vehicle to a person with a known familiarity with the type of drug being transported. The large quantity of drugs being transported constitutes evidence of intent to distribute them. United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004); Ojeda, 23 F.3d at 1476. Likewise, the large quantity of drugs is evidence of Benitez's knowledge, for it is highly unlikely that Trampas would have placed $540,000 worth of crystal methamphetamine in the hands of one who did not even know of its existence. Serrano-Lopez, 366 F.3d at 635. Also, Benitez's initial vague, inconsistent, and credulity-defying responses at the scene of the stop bespoke his knowledge of what he was transporting. United States v. Cortez, 935 F.2d 135, 143 (8th Cir. 1991). Accordingly, we reject Benitez's challenge to the sufficiency of the evidence.

## IV.

We have considered and find to be without merit Benitez's argument that we should declare unconstitutional on the ground that it has a chilling effect on a defendant's exercise of his Sixth Amendment right to trial Section 3E1.1 of the United States Sentencing Guidelines, which, in most cases, denies to a non-guilty-pleading defendant an offense level reduction for acceptance of responsibility.

The judgment is affirmed.

_____