# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-3251
_____

United States of America

*Plaintiff - Appellee*

v.

Larry K. Hayward

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: September 27, 2024
Filed: January 3, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Larry Hayward of five counts of heroin-related offenses. He then made an unsuccessful motion for acquittal or a new trial. On appeal, Hayward argues that the district court[1] abused its discretion during trial by admitting evidence

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

of an uncharged controlled buy involving both heroin and fentanyl. He further argues that the evidence was insufficient to support his conviction of one count of conspiracy to distribute drugs and two counts of aiding and abetting distribution of drugs. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

"We recite the facts in the light most favorable to the jury's verdict." United States v. Brandon, 64 F.4th 1009, 1013 (8th Cir. 2023) (citation omitted).

Hayward was in the business of selling heroin with his romantic partner, Jasmine Steed. Hayward and Steed had a system. One of them would accept calls from customers who were placing orders. That person would then direct the customer to contact the other person to obtain the heroin. Sometimes Steed would take the phone call and Hayward would make the physical sale, and other times Hayward would handle the initial call or text and direct the customer to Steed to finalize details and meet.

The operation appeared to fund their lifestyle. Though neither Hayward nor Steed had a legitimate job,[2] the couple seemed financially comfortable. At one point they had two large rental homes with basements, leather couches, and televisions. They also drove rental vehicles from time to time as well as a minivan that had been partially paid for in cash. They owned multiple items from luxury fashion brand Gucci. One of their homes contained more than $5,000 in cash. In addition, they provided for several children.

In early 2018, Hayward and Steed's operation caught the attention of law enforcement. After hearing Hayward and Steed's names frequently mentioned in interviews, Drug Enforcement Administration Special Agent John Stuart began investigating the couple. One of the tactics he deployed was the use of controlled

---

[2]Hayward claimed to be a rap promoter, but said that he didn't get paid.

buys, a technique in which law enforcement uses an undercover officer or a cooperating witness to purchase drugs from a target suspect to gain information about or evidence against that person.

The first relevant controlled buy took place on May 10, 2018. Stuart conscripted a confidential civilian source to make a controlled purchase from Steed. The source first called Hayward, who told the source to call Steed. The source then called Steed and told Steed the source had "two," meaning $200 to buy heroin. Steed and the source arranged a meeting site, where the source purchased a gram of heroin from Steed.

The second relevant controlled buy took place on May 15, 2018. This time, Steed was not involved. Once again, a confidential source called Hayward. Hayward gave the source a number to call, one that was later connected to a man named Demario Brown. Brown and the source arranged a meeting spot, where Brown sold the source a bag of heroin. Brown later admitted that Hayward had at times—including around May 2018—asked Brown to sell drugs while Hayward was out of town. Hayward would tell Brown how to package the drugs, who to meet, and where to go. After making a sale, Brown would take the money to Hayward's house.

The third relevant controlled buy took place on June 13, 2018. That afternoon, a confidential source tried to make contact with both Hayward and Steed. Eventually, Steed sent a message to the source directing the source to meet at "Sunshine and [G]rant" for the sale. The source went to that area and then texted with Hayward to say the source was at the Taco Bell in a Green Ford Escape. Hayward parked nearby, walked over to the source's car, got in for a short period, sold the source a bag of heroin, then returned to his own car.

The final relevant investigative efforts occurred on October 17, 2018. Pursuant to an arrest warrant, officers arrested Hayward during a traffic stop. They found a bag containing 7.622 grams of heroin on Hayward and a digital scale, an LG

cell phone, and various records in Hayward's vehicle. Additionally, investigators executed search warrants for both of Hayward and Steed's joint rental homes. At one house, investigators found more than $5,000 in cash in the master bedroom, a digital scale on the living room couch, and a toolbox in the laundry room containing two digital scales, a blender, and a handgun. At the other house, Steed was present. Officers found more than 70 grams of heroin in one of her pairs of pants, as well as a gun.

In June 2019, a grand jury returned a nine-count indictment naming Hayward, Steed, Brown, and others as defendants.[3] The government proceeded to trial on five counts against Hayward.[4] Count 1 charged Hayward and others with conspiracy to distribute heroin. Counts 2 and 3 charged him with aiding and abetting heroin distribution based on heroin sales with Steed on May 10, 2018 and Brown on May 15, 2018 respectively. Count 6 charged him with heroin distribution for the June 13, 2018 exchange. Finally, Count 9 charged him with possession with intent to distribute heroin based on his heroin possession on October 17, 2018.

Prior to trial, the government provided notice that it intended to present evidence of an uncharged August 2019 (post-indictment) controlled buy involving fentanyl. The government argued the evidence should come in under Federal Rule of Evidence 404(b) because it was relevant to showing the defendant's intent to distribute heroin. In both the charged instances and the uncharged instance, a confidential informant contacted one person to make a heroin purchase, then met with a different person to finish the purchase, and in all relevant instances, heroin was identified as part of the controlled substance. In the August 2019 purchase, lab

---

[3]Count 1 charged Hayward, Steed, Brown, and others with conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). Counts 2-4 and 6-9 charged Hayward and others with various drug offenses under 21 USC §§ 841(a)(1) and 841(b)(1)(C). Count 5 charged Hayward with money laundering under 18 U.S.C § 1957(a).

[4]Both Steed and Brown pled guilty to charges in their respective cases.

-4-

reports later showed the substance contained fentanyl as well. Hayward argued that the controlled buy involving heroin and fentanyl was much different than the heroin-only buys—it occurred nine months after the conspiracy ended, it took place in a different state, it involved different co-conspirators, and it involved a different drug—and should thus be excluded as irrelevant and unfairly prejudicial under Rules 404(b) and 403. The district court disagreed, and at trial the court admitted the evidence over Hayward's objection.[5] However, the court gave a limiting instruction regarding the use of the evidence and, at the request of Hayward, referred to the substance purchased as a "controlled substance" rather than as fentanyl.

Hayward was convicted on all five counts. Following the trial and conviction, he moved for acquittal or a new trial on Counts 1, 2, 3, and 9, arguing in relevant part that the evidence was insufficient to support conviction and that evidence of the uncharged controlled buy which involved both heroin and fentanyl should not have been admitted. The court denied the motion. Hayward was sentenced to 240 months' imprisonment.

He now appeals. He argues that the district court abused its discretion in admitting evidence of the controlled buy involving fentanyl. He further argues that there was insufficient evidence for the jury to find him guilty of conspiracy to distribute heroin (Count 1) and aiding and abetting Steed (Count 2) and Brown (Count 3) in distributing heroin.[6]

_____

[5]While fentanyl was referenced once during witness testimony, its presence was not highlighted. Immediately after the witness testified, the government read a stipulation into the record noting that "[t]he chemical analysis revealed that the multiple individual substances tested totaled approximately 1.88 grams of heroin." The stipulation said nothing about fentanyl.

[6]Though Hayward moved for a judgement of acquittal or a new trial on Count 9 as well, he is not now contesting the sufficiency of the evidence supporting that conviction.

II.

Hayward first argues that the district court erred in admitting evidence concerning the uncharged August 2019 controlled buy, which involved both heroin and fentanyl, alleging this error violated Federal Rules of Evidence 404(b) and 403. We review evidentiary rulings for abuse of discretion, with deference afforded to the district judge who conducted the trial. United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017). Reversal is proper "only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Picardi, 739 F.3d 1118, 1124 (8th Cir. 2014) (citation omitted).

Federal Rule of Evidence 403 authorizes the court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Unfair prejudice means "an undue tendency to suggest decision on an improper basis." United States v. Loveless, 139 F.3d 587, 592 (8th Cir. 1998) (citation omitted). Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act" is inadmissible for propensity purposes, but admissible for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). We apply "a four-part test to determine whether a district court abused its discretion in admitting 404(b) evidence." Brandon, 64 F.4th at 1020 (citation omitted). Under the test, evidence is properly admitted if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." Id. at 1020-21 (citation omitted). We apply this test with the recognition that Rule 404(b) is a "rule of inclusion," meaning we reverse "only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct." Id. (citation omitted).

Here, applying the first prong of the four-part test, the evidence is relevant to a material issue: intent. "By pleading not guilty, [Hayward] placed every element of the charges brought against him at issue." See Johnson, 860 F.3d at 1142. We have previously allowed evidence of other acts to establish knowledge and intent in narcotic distribution cases. See United States v. Thomas, 593 F.3d 752, 758 (8th Cir. 2010). Additionally, "the mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive." Id. (citation omitted). As in other cases where this Court has found evidence of other acts relevant to a defendant's intent, here the controlled buy at issue was evidence of Hayward's intent, knowledge, and absence of mistake.

Second, the uncharged August 2019 controlled buy—which involved fentanyl—was sufficiently similar to the charged heroin distribution crimes. In all instances, the transaction involved heroin and the confidential informant contacted one person to make a purchase, then met with a different person to finish the purchase. The uncharged August 2019 controlled buy also occurred within the same year and was thus not remote in time. See United States v. Benitez, 531 F.3d 711, 716 (8th Cir. 2008) ("Benitez's prior drug offense had occurred less than one year prior to the present offense and thus was not remote in time.").

Hayward points out several differences between the crimes charged and the uncharged August 2019 controlled buy, but none of them are significant enough to establish that the judge abused his discretion. Hayward notes that the uncharged buy occurred in a different state, with different co-conspirators, with different drug quantities, and with different drugs. While these differences make this prong a closer call, other bad acts "'need not be duplicates' of the charged crime" for them to be admissible under Rule 404(b). United States v. Green-Bowman, 816 F.3d 958, 963 (8th Cir. 2016) (citation omitted). Rather, they only need be sufficiently similar "to support whatever permissible inference makes the evidence relevant." Id. Here, the similarity between the transactions helped establish that Hayward had knowledge of and intent to commit the crimes he was ultimately charged with and that his role in the operation was not a mistake.

Third, the uncharged August 2019 transaction was supported by sufficient evidence. For evidence to be admissible under Rule 404(b), "the district court need only determine that a reasonable jury could find by a preponderance of the evidence that the defendant committed the prior act." United States v. Winn, 628 F.3d 432, 436 (8th Cir. 2010). We have upheld "testimony from even a single witness" as sufficient to support a 404(b) ruling. See Brandon, 64 F.4th at 1022. Here, the uncharged transaction was supported by the testimony of a police sergeant, a video of the controlled buy, physical evidence of the drugs, and a stipulation to the lab report, among other evidence. This evidence is ample to satisfy the prong.

Finally, the probative value was not substantially outweighed by the risk of unfair prejudice. "In the Rule 404(b) context, we will not reverse on this ground 'if we can discern from the record that the trial court performed the requisite balancing' under Rule 403." Id. at 1021-22 (citation omitted). Here, the record shows the district court both performed the balancing test and included a limiting instruction to diminish the risk of any unfair prejudice.

Hayward argues that the introduction of the evidence was particularly prejudicial because it showed the jury that Hayward's drug activities were not limited to the sale of heroin. Given the "extensive media coverage on the dangers and pervasiveness of fentanyl," Hayward argues in his brief, the prejudicial effect of this evidence far exceeded its probative value. However, there is no indication in the record that any evidence was introduced highlighting the dangerousness of fentanyl or its danger in comparison to heroin. Furthermore, the district court gave a limiting instruction that referred to a "controlled substance" rather than referencing fentanyl specifically. As we have previously recognized, "[w]e 'normally defer' to the district court's judgment in balancing between the probative value of evidence and the risk it poses of unfair prejudice." Green-Bowman, 816 F.3d at 964 (citation omitted). Hayward's argument does not overcome the substantial deference we pay to the district court here. Thus, the district court did not abuse its discretion in admitting the evidence at issue.

III.

Hayward next challenges the sufficiency of the evidence as to three counts: Count 1 (conspiracy), Count 2 (aiding and abetting Steed in distributing heroin), and Count 3 (aiding and abetting Brown in distributing heroin). "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Thompson, 881 F.3d 629, 632 (8th Cir. 2018) (citation omitted). We take each challenge in turn.

A.

Hayward argues there was insufficient evidence to support his conviction for conspiracy to distribute 100 grams or more of heroin. A defendant is guilty of conspiracy if the government proves "[(1)] that there was an agreement to achieve an illegal purpose, [(2)] that the defendant knew of this agreement, and [(3)] that the defendant intentionally joined the conspiracy." United States v. Agofsky, 20 F.3d 866, 870 (8th Cir. 1994). Because of the "highly secretive nature of conspiracies," agreements may be inferred entirely from circumstantial evidence. Id.

Here, sufficient evidence was presented at trial to convict Hayward. Several witnesses testified to a working relationship between Hayward and Steed to sell heroin. Multiple witnesses also testified that they regularly purchased heroin from Hayward and Steed, which allowed the jury to infer Hayward was a supplier and was thus involved in a conspiracy. See United States v. Mendoza-Gonzalez, 363 F.3d 788, 796 (8th Cir. 2004) ("The jury could have found it unlikely that [the defendant] grew, processed, packaged, and loaded such large amounts of marijuana and highly pure methamphetamine without assistance from any other person . . . ."). Additionally, when investigators searched Hayward and Steed's shared home and Steed's car, they found distribution amounts of heroin, multiple phones, a large amount of cash, a digital scale, and other indicia of drug trafficking. A reasonable

jury could thus infer that Hayward and Steed had an agreement to sell heroin and that Hayward knew about and intended the agreement.

Hayward further briefly argues that the evidence is not sufficient to support his 240-month sentence,[7] asserting that he did not know the extent of the conspiracy and could not reasonably have foreseen Steed's acts in furtherance of the conspiracy. Hayward claims that at most, the evidence showed he possessed 7.88 grams of heroin, and that the evidence connecting him to Steed—who had significantly greater quantities of heroin seized—is insufficient to convict him of conspiracy to distribute 100 grams or more of heroin. A defendant "may be convicted based on 'all reasonably foreseeable drug quantities that were in the scope of the criminal activity that he jointly undertook.'" Johnson, 70 F.4th at 1120 (citation omitted). As discussed above, ample evidence established that Hayward and Steed were knowingly and intentionally working to distribute drugs. Additionally, as laboratory reports analyzing the substances recovered showed, the government seized more than 111 grams of heroin during the investigation. Thus, the evidence was sufficient as to this count.

### B.

Hayward also argues there was insufficient evidence to support his conviction for aiding and abetting Steed in the distribution of heroin on May 10, 2018. A defendant is guilty of distribution if he (1) intentionally transfers a controlled substance and (2) at the time of the transfer, knows that the substance is controlled. United States v. Dimarco, 125 F. App'x 87, 89 (8th Cir. 2005) (unpublished per curiam). A defendant aids and abets a crime if "(1) the defendant associated [himself] with the unlawful venture; (2) the defendant participated in it as something

---

[7]Hayward presents and argues this as a challenge to the sufficiency of the evidence, not to his sentence. To the extent Hayward challenges the reasonableness of his 240-month sentence, he fails to explain how the sentence itself is improper. "Because the brief does not support this assertion with any argument, [we] deem[] the issue abandoned." United States v. Aldridge, 561 F.3d 759, 765 (8th Cir. 2009).

-10-

[he] wished to bring about; and (3) the defendant sought by [his] actions to make it succeed." United States v. Taylor, 813 F.3d 1139, 1147-48 (8th Cir. 2016) (alterations in original) (citation omitted).

The evidence presented at trial on this Count was sufficient. As described in Part III.A *supra*, several witnesses at trial testified to Hayward and Steed's working relationship. Hayward does not dispute that Steed sold a controlled substance on May 10, 2018. Furthermore, Hayward associated himself with the unlawful venture by directing the buyer to call Steed. While Hayward correctly points out that this direction to call Steed was the only direct evidence presented of his involvement in the May 10, 2018 transaction, circumstantial evidence of intent can be sufficient to support a conviction for distribution of controlled substances. See United States v. Cowley, 34 F.4th 636, 640 (8th Cir. 2022) ("Intent to distribute controlled substances may be proved by either direct evidence or circumstantial evidence." (citation omitted)). Here, given the plentiful evidence elsewhere in the record establishing that Steed and Hayward used a system of directing buyers to each other to make heroin sales, a reasonable juror could infer that Hayward directed the confidential source to call Steed because he wished to bring about and make successful the unlawful venture of heroin distribution. Thus, the evidence was sufficient as to Count 2.

C.

Finally, Hayward argues there was insufficient evidence to support his conviction for aiding and abetting Brown in the distribution of heroin on May 15, 2018. Once again, there is plenty of evidence incriminating Hayward in this transaction. Brown testified that Hayward asked him to sell heroin for him while Hayward was traveling, and that Hayward left heroin with Brown and instructed Brown on how to package it, who to sell to, and where to go. Brown also testified that he took the money he collected back to Hayward's home. He said he followed this procedure during the May 15, 2018 transaction. The government further

presented testimony and phone call transcripts showing that Hayward directed the confidential source to call Brown on May 15, 2018.

Hayward argues that Brown was too self-interested and his testimony too inconsistent to be credible, but he fails to support this argument with precedent. This Court has repeatedly held that "it is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." See, e.g., United States v. LaRoche, 83 F.4th 682, 690 (8th Cir. 2023) (citation omitted). Furthermore, this Court has consistently upheld verdicts that were based solely on the testimony of cooperating witnesses. See, e.g., United States v. Dickson, 70 F.4th 1099, 1103 (8th Cir. 2023). Thus, the jury's verdict on Count 3 was supported by sufficient evidence.

## IV.

For the foregoing reasons, we affirm.

_____