# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1215
_____

United States of America

*Plaintiff - Appellee*

v.

Paul Antonio Deon Parrow, also known as Paul Antonio Deon Parrow, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: December 18, 2025
Filed: April 15, 2026
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury found Paul Parrow guilty of conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) and (b)(1)(B). The district court imposed concurrent terms of imprisonment of 300 months. Parrow appeals, challenging an evidentiary ruling and the denial of his motion for a mistrial. For the reasons that follow, we vacate Parrow's conviction for possession with intent to

distribute and remand for a new trial. We affirm the district court's judgment in all other respects.

## I. BACKGROUND

In March 2022, law enforcement performed a traffic stop involving N.G. She had methamphetamine on her person and told law enforcement that she received the drugs from Parrow, who is also known as "Tone." N.G. agreed to act as a confidential informant.

While being recorded by law enforcement, N.G. made four controlled buys from Parrow. During the first controlled buy, she purchased crack cocaine and marijuana. N.G. purchased methamphetamine from Parrow in the other three controlled buys.

Law enforcement conducted surveillance of Parrow and identified a house on Esplanade Avenue that he was leasing. On November 3, 2022, police executed a search warrant for the Esplanade Avenue house and recovered methamphetamine and fentanyl from a safe. Police also recovered drug packaging material, digital scales, a kilo press, and items containing drug residue.

Following Parrow's indictment, the district court entered a discovery order that required the government to provide the defense with copies of all relevant law enforcement reports, witness statements, and memoranda of witness interviews prepared by law enforcement. Among other things, the government disclosed notes of an interview with D.B. and notes of an interview with someone identified only as a "concerned citizen." Unbeknownst to the defense, the concerned citizen was D.B.

In July 2024, the case went to trial. The jury heard from several witnesses including Parrow's co-conspirators and customers. One of Parrow's dealers testified that he initially received one to two ounces of methamphetamine but eventually built up to receiving between three quarters of a pound and one pound of

methamphetamine during his resupply meetings with Parrow. He then sold the methamphetamine to a co-conspirator in a quarter pound and half pound quantities and also enlisted his girlfriend to sell methamphetamine to her customers. The evidence showed he paid Parrow in cash and through Cash App. Documentary evidence of the Cash App transactions were submitted as an exhibit to the jury. He also testified that he typically saw Parrow with at least one pound of methamphetamine when he received his distribution and, on one occasion, saw Parrow with two pounds of methamphetamine.

Two more Parrow dealers also testified. One stated that she sold methamphetamine and heroin in one to two gram quantities for Parrow to four or five customers. Another dealer testified that she sold heroin for Parrow and witnessed him selling heroin. The most heroin she saw in Parrow's possession at one time was five grams.

Three more customers testified about buying heroin or fentanyl from Parrow. One of them purchased at least 0.25 grams of fentanyl on an almost daily basis for a year. She also occasionally purchased heroin from Parrow.

Towards the end of its case, the government called D.B. as a witness. She testified about frequently seeing Parrow in possession of a firearm, which was testimony consistent with the previously disclosed notes of her interview with police. However, D.B. also testified about Parrow's drug trafficking, which was not described in the notes of her interview with police.

During the recess following D.B.'s testimony, defense counsel notified the district court that any statements by her to law enforcement about witnessing Parrow engaged in drug trafficking had not been provided to him. The government responded that the person identified as "concerned citizen" in the notes of another police interview was D.B. but did not know if any other document provided to defense counsel notified him that D.B. was the concerned citizen.

After the trial recessed for the day, the government investigated the matter and, the following morning, admitted it had not identified D.B. as the concerned citizen. The district court found the government had not acted in bad faith in failing to notify the defense of this connection. Defense counsel moved for a mistrial as a sanction for the government failing to link D.B. to the concerned citizen interview notes. The district court denied the motion and instead sanctioned the government by striking all testimony from D.B. that was not previously disclosed.

The defense called Clemmie Kirk as a witness. Kirk was one of the owners of the house on Esplanade Avenue where Parrow resided. Kirk had two prior felony convictions for intent to deliver marijuana. After Parrow's indictment, Kirk was convicted of intent to deliver marijuana and fentanyl. Defense counsel unsuccessfully sought to use these convictions as reverse Rule 404(b) evidence to establish Kirk's opportunity and knowledge regarding storing methamphetamine and fentanyl in a safe inside a bench at the house.

Defense counsel then introduced the convictions under Rule 609(a). The jury heard only the name, date, and disposition of the convictions. The district court instructed the jury that it could consider the convictions only for the purpose of whether to believe Kirk's testimony and how much weight to give his testimony.

The jury found Parrow guilty of conspiracy to distribute a controlled substance, Count 1, and possession with intent to distribute a controlled substance, Count 2. The jury also found that Counts 1 and 2 involved more than fifty grams of methamphetamine and more than forty grams of fentanyl. This appeal followed.

## II.   DISCUSSION

### A.   Kirk's Prior Convictions

We review a district court's exclusion of evidence for abuse of discretion. United States v. Copp, 1 F.4th 573, 576 (8th Cir. 2021). We will not reverse an

evidentiary ruling if the error was harmless. United States v. Love, 521 F.3d 1007, 1009 (8th Cir. 2008). An evidentiary ruling is harmless when, "after reviewing the entire record, this court determines that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." United States v. Garrett, 103 F.4th 490, 496 (8th Cir. 2024) (citations omitted). Stated another way, an error is harmless "where it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty without the error." United States v. Lozier, 122 F.4th 717, 724 (8th Cir. 2024) (citations omitted).

### 1.      Conspiracy to Distribute a Controlled Substance

While the jury heard about Kirk's convictions, Parrow could not use them to explicitly argue that Kirk had the opportunity to keep drugs in the safe at the Esplanade Avenue house. At best, had the jury concluded Kirk owned those drugs, it would have had only a slight influence on the verdict on the conspiracy count. Three of Parrow's drug dealers and five of his customers testified about his drug trafficking activities. There was overwhelming evidence of Parrow's guilt.

Excluding the drugs recovered from the safe, the jury would also be able to conclude that the conspiracy involved more than fifty grams of methamphetamine and more than forty grams of fentanyl. Witness testimony established that Parrow distributed at least a half pound of methamphetamine every other day. Law enforcement testimony provided corroboration. One customer testified that she purchased from Parrow at least 0.25 grams of fentanyl on an almost daily basis for a year. There was sufficient evidence to support the jury's verdict on the methamphetamine and fentanyl quantities for the conspiracy count.

It is clear beyond a reasonable doubt that a rational jury would have found Parrow guilty on Count 1 despite the alleged error. Lozier, 122 F.4th at 724. The district court's reverse 404(b) ruling was harmless as to Count 1.

## 2.    *Possession with Intent to Distribute a Controlled Substance*

The exclusion of the convictions as reverse 404(b) evidence on Count 2 presents a different question.  An essential element of the offense is Parrow's knowing possession of the methamphetamine and fentanyl in the safe at the Esplanade Avenue house.  The only evidence presented to the jury on this element was the recovery of the drugs from the safe, that Parrow was leasing the property, and testimony from the girlfriend of one of Parrow's dealers that it was one of the three locations where her boyfriend received methamphetamine from Parrow.  Nobody testified to seeing Parrow store drugs in the safe or to him talking about storing drugs in a safe at the house.

The three convictions establish that Kirk, one of the owners of the house, sold drugs.  One of the convictions involved Kirk selling drugs from the Esplanade Avenue house.  This evidence may have cast reasonable doubt on the jury's decision on whether Parrow knowingly possessed the methamphetamine and fentanyl.  Lozier, 122 F.4th at 724.  This evidentiary error cannot be considered harmless.  See Garrett, 103 F.4th at 496 (if the error had more than a slight influence on the verdict, it is not harmless).

We now turn to whether the district court abused its discretion in excluding the prior convictions under Rule 404(b).  Courts "construe Rule 404(b) broadly as a rule of inclusion . . . ."  United States v. Thomas, 791 F.3d 889, 893 (8th Cir. 2015) (quoting United States v. Hawkins, 548 F.3d 1143, 1146 (8th Cir. 2008)).  The same factors used to analyze 404(b) evidence offered by the government against the defendant apply to reverse 404(b) evidence.  United States v. Harry, 930 F.3d 1000, 1007 (8th Cir. 2019).

First, the proponent must establish a non-propensity purpose for the conviction, which may include motive, opportunity, and knowledge.  Thomas, 791 F.3d at 894.  After demonstrating a non-propensity purpose, the prior conviction is admissible if it "is relevant, is similar in kind and not too remote in time, is

sufficiently supported by the evidence, and the potential prejudice does not substantially outweigh the probative value." Id. The government did not contest that Kirk's convictions are sufficiently supported by the evidence.

One non-propensity purpose asserted by Parrow was opportunity. Kirk owned and had access to the Esplanade Avenue house and sold drugs from it. The convictions illustrate Kirk's opportunity to store drugs at the house.

Next, the convictions are relevant to an element of the possession charge – who possessed the drugs recovered from the safe? The district court concluded the relevance was "marginal" because the name, date, and disposition of the conviction was admitted under Rule 609 and possession can be either exclusive or joint, meaning both Kirk and Parrow could possess the drugs in the safe.

The admission of the convictions under Rule 609 meant they were restricted in two ways. First, the district court instructed the jury that it could consider the convictions only for the purpose of whether to believe Kirk's testimony and how much weight to give his testimony. Second, the jury did not hear any of the details of the convictions, which included Kirk's sale of drugs from the Esplanade Avenue house. The jury could not consider the convictions for the purpose of determining whether Kirk had the opportunity to store drugs in the safe.

In the joint possession case relied on by the district court, when law enforcement executed the search warrant, they found the defendant sleeping on top of marijuana in a room where crack cocaine, powder cocaine, and a large brick of marijuana were all in plain sight. United States v. Jackson, 610 F.3d 1038, 1041 (8th Cir. 2010). In this case, the drugs were locked in a safe, which was concealed within a bench. The government presented no evidence of Parrow storing drugs in or retrieving drugs from the safe. Evidence that another drug dealer had access to the house and sold drugs out of that house is relevant to the possession charge. See United States v. Hayward, 124 F.4th 1113, 1119 (8th Cir. 2025) (prior bad act is relevant when it is evidence of an essential element of the crime).

-7-

Regarding the similarity factor, the district court found Kirk sold different drugs, and the government asserts the drugs are different because Kirk sold fentanyl in pill form while the fentanyl recovered from the safe was in powder form. This Court has approved the admission of a prior conviction for cocaine possession in a trial on methamphetamine possession "given that both substances are illegal." United States v. Benitez, 531 F.3d 711, 716 (8th Cir. 2008). The Court has also approved testimony about a controlled buy for fentanyl in a prosecution for heroin distribution. Hayward, 124 F.4th at 1119. Kirk's convictions for intent to distribute marijuana and fentanyl meet the similarity requirement. Id.; Benitez, 531 F.3d at 716.

The government asserts Kirk's convictions are too remote in time, and the district court held Kirk's 2024 conviction inadmissible because it occurred after the search of the Esplanade Avenue house. "There is no absolute rule regarding the number of years that can separate offenses." United States v. Edelmann, 458 F.3d 791, 810 (8th Cir. 2006). But a thirteen-year gap between the prior bad act and the charged offense has been considered "the typical outer limit for remoteness." Harry, 930 F.3d at 1008. Law enforcement searched the house in November 2022. Kirk's convictions were from 2019, 2022, and 2024. Because the convictions were less than thirteen years from the date of the search, they are not too remote. Id.

Under Rule 404(b), there is no bar on the admission of bad acts solely because they occurred after the indictment and prior to trial. United States v. Thomas, 593 F.3d 752, 758 (8th Cir. 2010) (citations omitted). In Thomas, the government charged the defendant with conduct that occurred in 2004 and was allowed to present evidence at trial of an investigation that occurred in 2008. Id. To deny the admission of a conviction solely because it occurred after the indictment is an abuse of discretion. See Cheeks v. Belmar, 162 F.4th 899, 907 (8th Cir. 2025) (citations omitted) (applying an incorrect legal standard is an abuse of discretion).

Finally, a district court may exclude a conviction if the potential prejudice substantially outweighs the probative value of the evidence. The district court found

that the risks of confusing the issues and misleading the jury substantially outweighed the probative value. Yet, this Court has routinely affirmed the admission of convictions and other bad acts against defendants. Hayward, 124 F.4th at 1119; Thomas, 593 F.3d at 758; Benitez, 531 F.3d at 716; Edelmann, 458 F.3d at 810. Furthermore, any potential confusion or misleading may be remedied by a limiting instruction. See Hayward, 124 F.4th at 1120 (unfair prejudice remedied by limiting instruction); Thomas, 593 F.3d at 759 (same).

The government asserts that admitting the convictions under Rule 404(b) would result in a mini trial over the "extent of Kirk's guilt for other acts." When 404(b) evidence is admitted against a defendant, it does not turn into a mini trial over the extent of the defendant's guilt for the prior bad acts. Parrow sought to introduce only three controlled substances convictions with the additional factual detail that one of them involved sales out of the Esplanade Avenue house. Cf. United States v. Battle, 774 F.3d 504, 514 (8th Cir. 2014) (legitimate mini trial concern because defendant sought to elicit testimony on "detailed fact patterns" for a "long string of offenses" to establish modus operandi). An appropriate limiting instruction would explain that the jury could consider the convictions for the purpose of determining whether Kirk had the opportunity to store the drugs in the safe. It would then be for the jury to consider all the evidence, including the credibility of Kirk's testimony, in determining whether Parrow knowingly possessed the drugs.

The district court abused its discretion by incorrectly applying this Court's precedent on Rule 404(b) evidence. Because there was scant evidence establishing Parrow's knowing possession of the drugs in the safe, we cannot conclude this error was harmless. Parrow's conviction for possession with intent to distribute a controlled substance is vacated.

B.      Discovery Sanction

A district court's chosen discovery sanction is also reviewed for abuse of discretion. United States v. Amaya, 750 F.3d 721, 727 (8th Cir. 2014). When

determining whether the district court abused its discretion in its choice of discovery sanction, we consider: "1) the reason, or reasons, for the delay in production of the evidence, including whether the government acted in bad faith; 2) whether the defendant was prejudiced; and 3) whether a lesser sanction would secure future compliance by the government." United States v. Sims, 776 F.3d 583, 585-86 (8th Cir. 2015). The lesser sanction factor is inapplicable here because Parrow is seeking a greater sanction.

The district court found that there was no bad faith in the failure to link D.B. to the "concerned citizen" moniker in the police report. During the trial, prior to calling her as a witness, a law enforcement officer testified that D.B. was the concerned citizen, which the district court found "helpful" but insufficient to provide notice to the defense.

As to the prejudice factor, the district court instructed the jury to disregard all of D.B.'s testimony other than her testimony related to Parrow's possession of a firearm. With her testimony about Parrow's drug trafficking struck, there was little to no prejudice to Parrow regarding the failure to link D.B. to the concerned citizen report. Furthermore, as previously described, other witnesses provided overwhelming evidence of Parrow's guilt on Count 1.

Parrow likens his case to United States v. Curry, 328 F.3d 970 (8th Cir. 2003), in which the court granted a mistrial due to the government's failure to disclose impeachment evidence and the government's improper and prejudicial comments during closing argument. The significance of the impeachment evidence was that it related to the only witness who could testify as to one of the essential elements of the crime—the victim's capacity to consent. Curry, 328 F.3d at 973. Unlike the conduct in Curry, at Parrow's trial, there were no improper and prejudicial comments during closing argument, and D.B.'s excluded testimony was duplicative of other witnesses' testimony on the essential elements of Count 1.

The government did not act in bad faith in failing to link D.B. to the concerned citizen report, and there was little to no prejudice in letting her testify and then striking that part of her testimony. The court did not abuse its discretion in excluding testimony unrelated to Parrow's possession of a firearm as a discovery sanction to secure future compliance by the government.

## III.   CONCLUSION

For the foregoing reasons, we vacate the conviction on Count 2 and remand for a new trial. We affirm the district court's judgment in all other respects.

_____